JAMES SHANE, Respondent, *v.* NATIONAL BISCUIT COMPANY, Appellant.

*Negligence — injury from falling over a skid left on a sidewalk — failure to allege that the skid was slippery does not prevent proof thereof — what does not call the jury's attention to the fact that an insurance company is defending an action.*

In an action brought to recover damages for personal injuries sustained by the plaintiff, the latter gave evidence tending to show that, while passing along the sidewalk of a city street in front of the defendant's premises, he slipped and fell upon a skid which the defendant was accustomed to use in conveying merchandise to and from its wagons and building; that the skid, which was about four feet wide and was constructed of planks, was covered with a pasty, slippery substance owing to its having been used in the unloading of flour; that it was not in use at the time of the accident and that one end thereof rested upon the sidewalk and the other upon the defendant's premises, the latter end being about eight inches higher than the sidewalk end.   It appeared that there was a space between the skid and the curb in which two persons could walk abreast, but the plaintiff testified that at the time of the accident he was in a crowd and did not discover the skid until he stepped upon it.

The evidence given by the defendant in explanation of the use of the skid was to the effect that it was used from about three o'clock each morning until about five in the loading of wagons; that it was then generally taken in; that at seven o'clock in the morning the skid was again brought into use in the unloading of wagons; that at the time when the accident happened, which was shortly after seven-fifteen in the morning, the defendant's wagons were either preparing to load or were actually loading.

The complaint did not set forth that the skid was slippery, but it did allege that the skid was placed and maintained in such a manner as to make it unsafe and dangerous to foot passengers; that the plaintiff received his injuries by reason of the placing of the skid on the sidewalk, and that the defendant negligently maintained it there. Upon the trial it appeared that a few days after the accident the plaintiff was called upon by an attorney, who, according to the plaintiff, told the latter that he had been sent by the plaintiff's employer in regard to the insurance, and that he wanted to get a statement from the plaintiff. A number of questions were then asked the plaintiff with reference to the statement as to the insurance.

*Held,* that a judgment entered upon a verdict in favor of the plaintiff should be affirmed;

That the questions of the defendant's negligence and of the plaintiff's freedom from contributory negligence were properly submitted to the jury;

That the failure of the plaintiff to specially aver in his complaint that the skid was in a slippery condition did not prevent the jury from considering such slippery condition upon the question of the defendant's negligence;

That the defendant was not entitled to have the judgment reversed on the theory that the plaintiff's counsel had unwarrantably brought the attention of the jury to the fact that an insurance company was defending the action.

HISCOCK, J., dissented.

APPEAL by the defendant, the National Biscuit Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Erie on the 17th day of May, 1904, upon the verdict of a jury for $2,000, and also from an order entered in said clerk's office on the 18th day of April, 1904, denying the defendant's motion for a new trial made upon the minutes.

*Frank Gibbons,* for the appellant.

*Timothy G. Sheehan,* for the respondent.

STOVER, J.:

The defendant conducts its business on the east side of Ellicott street in the city of Buffalo, and in so doing is accustomed to use the premises in front of its building for loading and unloading its wagons. Skids are used, upon which barrels, boxes and other merchandise is taken to and from the wagons to the factory of the defendant.

On the 27th day of January, 1903, plaintiff was in the employ of the Frontier Telephone Company as a lineman. He left his resi-

dence at seven-fifteen in the morning so as to be at the office of the company at half-past seven.  As he came down Ellicott street in front of the defendant's premises, he stepped on a skid, made by nailing three or four planks together.  At the time of the accident the skid was not in use, but one end was resting upon the sidewalk, the rest of the skid being upon the premises of the defendant.  As the plaintiff testified, " it was about eight inches high at the end, at the door, and it run down to the sidewalk to a point I should judge it was about four feet out in the sidewalk," the skid being about four feet wide.

The morning was dark, or as the testimony showed at the time of the accident it was just before daylight, and some of the witnesses express it a twilight, and the ground and walk were covered with slush.  The testimony showed that the skid was covered with some slippery substance from being used in the unloading of flour.  As the plaintiff passed along the street there was quite a crowd of people passing, and as he came to the skid he stepped upon it, slipped and fell, sustaining the injuries complained of.  The plaintiff testified that as he was walking down the sidewalk a number of people were coming down to work by two, three or four abreast, walking down the sidewalk.  There were people right ahead of him and some farther on, and that he first noticed the skid when he stepped upon it.  His testimony was that it was a cloudy, damp morning, foggy, that it was before sunrise and dark.

The defendant insists that its negligence was not established by the evidence.  While no question is raised as to the presence of the skid as described by the plaintiff, it is insisted that the use of the sidewalk in the manner shown was a reasonable use, and negligence was not, therefore, established.

The evidence on behalf of the defendant, and which undertook to explain the use of the skid at this point, was to the effect that the wagons would load at this point, beginning at three o'clock in the morning, and the skid would be used until about five in the morning ; that generally the man there would then take it in.  That at seven o'clock in the morning what was known as the city delivery-man and others would use the skid, and it would be shoved out again.  That on the morning in question the skid had been used up to nearly five o'clock, and that at seven other wagons came, and

were either preparing to or were actually engaged in loading the wagons at the time. It appeared that there was a space where probably two people could pass abreast between the skid and the wagon at the curb.

As to the contributory negligence of the plaintiff, it appears as above stated, that he was passing along in a crowd on the way to his place of business, that he did not discover the obstruction on the sidewalk until he stepped upon it, and that stepping upon it he slipped and received his injuries.

While there is not a great conflict in the testimony, yet different deductions may be drawn from it, and we think that the questions both of the negligence of the defendant and the contributory negligence of the plaintiff were properly left to the jury.

A few days after the accident the plaintiff was called upon by an attorney who, according to plaintiff, told plaintiff that he represented the Frontier Telephone Company in whose employment the plaintiff was at the time of the accident; that the company had sent him down in regard to the insurance, and that he wanted to get a statement from plaintiff. A number of questions were asked the plaintiff with reference to the statement as to the insurance, and upon this appeal the defendant bases an assignment of error in that the counsel had unwarrantably brought the attention of the jury to the fact that the insurance company was defending the action. We do not think the incident warrants a deduction that the plaintiff acted improperly in this regard. The intimation was not that the insurance company was defendant, but that the employer of the plaintiff desired a statement with reference to the insurance. It is well known that employers are in the habit of carrying employer's liability insurance, or insurance against injury to their employees through their negligence, and the statement of the plaintiff was to the effect that it was on behalf of his employers that the statement was desired ; not for the defendant, nor for an insurance company connected in any way with the defendant; and the plaintiff having been questioned with reference to the statement and the manner of obtaining it, was entitled to give the circumstances surrounding it, and the representations that were made to him at the time the statement was procured. If the statement was not to the advantage of the defendant the plaintiff was in nowise to blame, and so long as the

testimony was proper, the fact that it was injurious to the defendant was not a sufficient ground for its exclusion. There was no claim or intimation that an insurance company was behind the defendant, but the entire incident is covered by the statement that the plaintiff understood that the person applying to him represented his employer with reference to insurance in which it was interested. Whether this was true or not does not affect the competency of the proof, but it was received as a part of the transaction with reference to the statement, and we can see no error in the reception of the testimony, nor anything to base a statement upon that counsel had unwarrantably referred to the fact that an accident insurance company was defending the case.

The defendant presents one other ground, namely, that the court erred in admitting testimony with reference to the condition of the skid at the time of the accident.

It appeared that the weather was damp; that the skid, from its use, had become covered with a paste or slippery substance which rendered it more dangerous than it would have been if the planks had been dry and not slippery.

The complaint did not set forth that the skid was slippery, but it did allege that the skid or runway was placed and maintained in such a manner as to make it unsafe and dangerous to foot passengers walking along the sidewalk on the easterly side of Ellicott street; and that plaintiff received his injuries by reason of the placing of the skid on the sidewalk, and further alleging that defendant negligently maintained it there.

We do not think that the plaintiff was bound to allege the actual condition of the skid at the time. The allegation that a skid was used there was of itself an allegation of a dangerous obstruction. He was not bound to allege either the manner of construction of the skid, nor its actual condition at the time, unless that condition was one which of itself rendered the skid dangerous. He was not bound to allege the material of which it was constructed; he was not bound to allege the fact that it was either wet or dry before he could be allowed to give proof with reference to it; but having alleged that the skid was there, and it of itself being a dangerous obstruction, he can prove the manner of construction, the material and its condition at the time of the accident. He was no more

bound to allege that the skid had become slippery by reason of its use than he was to allege that the day was rainy or dark; but having alleged the dangerous obstruction he could prove the surroundings, such as the rain, the darkness, the angle at which the skid was placed, and any other circumstances or surroundings without alleging it in detail in his complaint. It would seem that he was under no greater duty to allege the slippery condition of the skid than he would have been to allege that there were ropes attached to it for the purpose of handling it, if he desired to prove it. Having alleged its existence it was permissible to prove the actual condition, construction and circumstances surrounding it at the time of the accident.

Defendant requested the court to charge " that no negligence can be predicated upon any condition of the skid, because it is not charged in the complaint." The reply of the court we think fully indicates the correct proposition: " I will not change my charge upon that subject. I think the condition just as it existed there is to be taken into account by the jury, and they are to determine from that whether the use was a reasonable one by the defendant under all the circumstances, taking into consideration not only the incline of the skid but its condition as well."

We think the evidence raised a question of fact for the jury, that the questions were properly submitted by the court, and that the judgment should be affirmed.

All concurred, except HISCOCK, J., who dissented in a memorandum.

HISCOCK, J. (dissenting):

I dissent from the conclusions reached by a majority of the court in favor of the affirmance of the judgment in this case. I think there are two reasons why the same should be reversed.

*First.* The trial court permitted the jury to find in favor of the plaintiff for the reason that the skid had become slippery through the deposit of dough thereon, and that plaintiff's fall was due to his slipping upon this substance. In my opinion the complaint contained no allegations which covered this theory. It proceeds upon the line that the defendant placed and maintained the skid in such

a manner as to be a general obstruction to those passing along the sidewalk. The allegations clearly outline the idea that the skid was from its general nature, as placed and maintained upon the sidewalk, the cause of plaintiff's trouble, and there is no fair suggestion that it had become an obstruction because of some peculiar, unusual and temporary condition into which it had fallen. The complaint relates to the trouble caused by the skid in its ordinary and general condition, and does not point to any danger not naturally and inherently incidental.

It is suggested that it was unnecessary to point out in the complaint the special conditions which, as claimed, caused plaintiff to fall; that it was sufficient to allege in general terms that the skid was an obstruction and source of danger to those using the sidewalk. I agree that it would not be necessary to set up in the complaint in order to prove upon the trial some of the general features of the skid. Under general allegations it would probably be permissible to prove the ordinary and natural conditions of the obstruction, But I think that if the plaintiff expected to rely upon some particular, unusual, temporary feature which, rather than the general construction of the skid, caused his fall, he should have set the same forth in his complaint.

*Second.* I think it was an improper act upon the part of plaintiff's counsel to ask questions tending and intended to bring before the jury the fact that this action was being defended by an accident insurance company. It is perfectly clear that this was the intention. The learned trial court by his remarks at the time seems to have fully realized it. There was no other sufficient excuse for asking the questions propounded by plaintiff's counsel. They were asked of his own client and there was no suggestion in the evidence already given by him that he had left out any part of the conversation between him and defendant's attorney which required the asking of the objectionable question. Upon the examination of some unknown witness counsel, perhaps, might have been justified in putting questions intended to ascertain whether some part of a conversation had been left out, but it is not to be assumed that counsel was in such ignorance of what his client could testify to upon this important subject as required the propounding of the question asked and complained of. It is urged that it is common for employers to

take out accident insurance policies, and that, therefore, when defendant's counsel suggested to the plaintiff that he came representing his employer it was natural to assume that he represented an accident insurance company. There is no claim that plaintiff's employer was responsible for his accident, and so far as I know it has not been customary for employers to take out insurance policies to guard against accidents to their employees resulting from the negligence of third parties. Of course the counsel for the defendant denies explicitly and with quite convincing force that he made to plaintiff any such statement as was claimed.

It seems to me that the conduct of counsel comes fairly within the principles laid down by this court in *Manigold* v. *Black River Traction Co.* (81 App. Div. 381).

I think the judgment and order should be reversed.

Judgment and order affirmed, with costs.