SCHUETZLE, Respondent, v. NASH-FINCH CO., et al, Appellants

(38 N. W.2d 137.)

(File No. 9038. Opinion filed June 13, 1949)

**Williamson & Williamson,** Aberdeen, for Appellants.

**Mickelson & Homeyer,** Selby, and **E. S. Haerter,** Hosmer, for Respondent.

SICKEL, J.   This action was brought by the plaintiff, Mary Schuetzle, administratrix of the estate of John Schuetzle, deceased, against The Nash-Finch Company, a Corporation, and Lloyd Dickinson, defendants.   On October 30, 1947, John Schuetzle was driving a Campbell county truck westward on United States Highway Number 12, at night, loaded with metal culverts.   At a point about two miles west of Bowdle in Edmunds County a passenger car belonging to Vernard Schneider was standing on the north side of the road headed west, the left wheels on the blacktop and the right wheels on the shoulder of the highway.   As Scheutzle approached the Schneider car another vehicle approached from the west.   Schuetzle remained on the north side of the road and slowed down to a speed of three or four miles per hour and when he came within seventy or eighty feet of the Schneider car a Nash-Finch truck driven by Dickinson crashed into the rear end of the county truck, thrust one of the culverts forward into the driver's cab and thereby caused the death of Schuetzle.   The jury returned a verdict in favor of plaintiff for $10,000, and defendants have appealed.

Appellants contend that the court erred in submitting the case to the jury for the reason that the evidence shows that decedent was negligent and that such negligence was

a contributing cause of the collision. This contention is based on the claim that the county truck was not equipped with warning signals as required by law.

■ Failure to comply with the statute in regard to lights may have been conclusive as to decedent's negligence but if no injury resulted from such failure the negligence is not contributory and does not constitute a defense to the action. Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502; Dwyer v. Peters, 58 S. D. 357, 236 N. W. 301. Whether the evidence is sufficient to justify the verdict depends upon the surrounding circumstances.

■ The statute provides that "Whenever the load on any vehicle shall extend more than four feet beyond the rear of the bed or body thereof * * * between one-half hour after sunset and one-half hour before sunrise there shall be displayed at the end of any such load a yellow or red light plainly visible under normal atmospheric conditions at least two hundred feet from the rear of such vehicle." SDC 44.0340. The evidence shows that the bed of the county truck was fourteen feet long and ninety-four inches wide. It was loaded with six corrugated metal culverts all thirty-six inches in diameter and varying in length from sixteen to twenty feet. They were loaded three on the bottom, then two, and one at the top. The only twenty-foot culvert was placed on the left side of the bottom row. Before leaving Aberdeen a kerosene flare was attached to the twenty-foot culvert by a wire looped around the culvert. This flare hung from the bottom of the culvert near the rear end. The headlights were turned on at Ipswich and the flare was burning. Kosel, riding in the cab with decedent, looked back three or four times afterwards and saw the flare burning. He saw it burning when they re-entered the truck at Roscoe and again at a point one to three miles east of Bowdle, a distance of three to five miles east of the place where the collision occurred. This flare was found on the side of the road at the site of the collision. So far as we are able to ascertain from the record the display of the flare complied with the requirements of SDC 44.0340, and the proved facts were

sufficient to justify the jury in finding that it was still lighted at the time of the collision.

Kosel also testified that the red lights on the top of the cab of the truck were lit at Roscoe. Schneider, owner of the car that stopped for a flat tire, testified that he passed the county truck about five miles east of Bowdle; that he saw it five or six hundred yards away, plainly; that he saw the red lights on the cab of the county truck when he passed it. Kosel testified that immediately after the collision he asked Dickinson if he did not see the county truck to which Dickinson answered "Yes, but I didn't know whether you were going or stopping." The site of the collision was illuminated by the headlights on the county truck, the head and tail lights of the Schneider car and the headlights of the vehicle approaching from the west. Schneider was changing his tire when he saw the county truck pull up slowly and he saw the Nash-Finch truck coming from the west when it was a half mile away. He and his brother "took off" into the north ditch where he signalled with his flashlight.

Dickinson was hauling a 16,000 pound load in the Nash-Finch Truck at a speed of thirty to forty miles per hour His lights were on low beam and his visibility was fifty feet except that he had a spotlight which, when in use, would extend his vision to seventy-five or one hundred feet. When he saw the lights of the vehicle approaching from the west he took his foot off the gas, turned off the spotlight but did not raise the beam of his headlights. He testified that he saw nothing in front of him until he collided with the county truck. He did not apply his brakes and made no effort to stop.

■ Whether the tail and clearance lights were lighted at the time of, and before, the collision is doubtful. The absence of such lights if established by the evidence might be sufficient to justify the court in holding that Schuetzle was negligent, but whether such negligence was a contributing cause of the injury is a question for the jury. Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502.

■ The record contains some inconsistencies and contradictions but the jurors are the exclusive judges of all

questions of fact. The question of contributory negligence was submitted to the jury and determined in favor of the respondent. We find that the verdict is supported by substantial evidence and it is therefore final. Descombaz v. Klock, supra; Dwyer v. Peters, 58 S. D. 357, 236 N. W. 301; Wolff v. Stenger, 59 S. D. 231, 239 N. W. 181.

■ Appellants also contend that the court erred in permitting plaintiff's counsel to ask the jurors on voir dire examination whether any of them was a stockholder, agent, officer or director in any insurance company selling public liability insurance. When plaintiff desires to interrogate the jurors on voir dire examination as to their interest in an insurance company, he must first show that he is acting in good faith. O'Connor v. Sioux Falls Motor Co., 57 S. D. 397, 232 N. W. 904; Morton v. Holscher, 60 S. D. 50, 243 N. W. 89; Simmons v. Leighton, 60 S. D. 524, 244 N. W. 883; Grant v. Matson, 68 S. D. 402, 3 N. W.2d 118.

■ In the absence of the jury counsel for plaintiff stated to the court that he had made inquiry of the manager of defendant Nash-Finch Company at Mobridge and was informed that all trucks of The Nash-Finch Company were insured, and that the insurance was written in the home office at Minneapolis and that a blanket policy covered all trucks operated by that company. This statement was not disputed. An examination of the entire record convinces us that the information presented to the court was sufficient to establish the good faith of counsel.

The next question relates to testimony regarding insurance. The record shows that Schneider was called as plaintiff's witness. The direct examination did not allude to any written statement of facts previously signed nor to any conversation about such a statement. The cross-examination of the witness Schneider prceeded as follows:

"Now, is it a fact that on or about the 3rd day of November 1947, Mr. Williamson came out to your place and asked you about the facts surrounding this accident? A. Mr. Williamson?

"Q. Yes. A. Yes, there was somebody out there, I can't recall his name.

"Q. It was not myself?   A. No, it was not you."

The witness then testified that he signed a written statement which was presented to him at that time.   The purpose of defendants was to impeach the testimony of the witness as to his estimate of distance between his car and the county truck at the time of the collision.   The witness admitted signing the statement and the exhibit was received in evidence.   On redirect examination the witness's attention was directed to the exhibit and he was asked:

"Now, in reference to this distance, is that an approximation that you gave to Mr. Williamson's son when he was out there on November 3rd.?   A. Yes, they were just roughly estimated."

The witness further testified that the statement was not in his own handwriting and he was then asked:

"Q. And is it in the handwriting of your father?   A.   No, it is not.

"Q.   And is it the handwriting of Mr. Williamson's son?   A. I don't know; he introduced himself as the insurance agent; I can't recall the name."

A motion to strike the answer was granted and the jury was admonished to disregard the reference to insurance. Motion to declare a mistrial was also denied.

██    Statements of witnesses implying that the defendant carried liability insurance, not responsive to questions asked but in the nature of voluntary statements that could not have been anticipated, are not deemed to be reversible error if they are excluded from consideration by the jury under proper instructions of the court.   This rule is particularly applicable in cases where counsel for plaintiff propounds to his own witness a pertinent and proper question on redirect examination, on a matter brought into the case on cross-examination, and which was not calculated to elicit any information with reference to insurance   Annotation 56 A. L. R. 1418, Vb. p. 1514.

A similar case was before the Supreme Court of Washington in Gianini v. Cerini, 100 Wash. 687, 171 P. 1007, 1009, and the court said: "Here the reference to insurance 'cropped

out' on redirect examination touching pertinent matter brought into the case by the defendant on cross-examination. In the instant case, counsel for defendant having gone into the matter of the statement signed by the plaintiff, it was entirely proper for the plaintiff to show on redirect all the circumstances under which the statement was made, and to develop the entire conversation relating thereto. The evidence therefore was competent, and the mere fact that it may have been prejudicial did not render it inadmissible. If the effect was harmful, such was the defendant's misfortune rather than the plaintiff's fault." Shane v. National Biscuit Co., 102 App. Div. 188, 92 N. Y. S. 637, affirmed without opinion in 186 N. Y. 514, 78 N. E. 1112; Heinz v. Backus, 34 Ga. App. 203, 128 S. E. 915; cf. Behseleck v. Andrus, 60 S. D. 204, 244 N. W. 268, 88 A. L. R. 596.

The answer of the witness Schneider was not responsive and therefore could not have been reasonably anticipated by counsel for plaintiff. There is nothing to indicate an attempt or design on the part of the plaintiff's counsel to introduce incompetent evidence. Furthermore, counsel for defendants introduced the written statement in evidence as a part of the cross-examination of the witness and this made it permissible for plaintiff to show all the surrounding circumstances on redirect examination.

Finding no error in the record the judgment is affirmed. All the Judges concur.