JACOBSON, Respondent v. COADY, Appellant

(84 N.W.2d 1)

(File No. 9649.   Opinion filed July 11, 1957)

Rehearing denied August 5, 1957

**Gunderson, Farrar & Carrell,** Rapid City, for Defendant and Appellant.

**Whiting, Lynn & Freiberg,** Rapid City, for Plaintiff and Respondent.

RUDOLPH, J. Plaintiff recovered a judgment against the defendant, based upon a jury's verdict, for damages sustained as a result of an automobile collision. Defendant has appealed. We reverse the judgment.

We state the facts only in so far as they are necessary to present defendant's Assignment of Error No. 5. This assignment alleges error because the trial court refused to instruct the jury on the obligation of a defendant confronted with a sudden emergency. This court has held that an automobile driver is not negligent if he acts reasonably when confronted with an emergency if his own negligence has not caused the emergency. Miller v. Stevens, 63 S.D. 10, 256 N.W. 152; Campbell v. Jackson, 65 S.D. 154, 272 N.W. 293; Stacey v. Patzloff, 67 S.D. 503, 295 N.W. 287.

The defendant testified that he was driving a new station wagon from a point in Kansas to the airbase at Rapid City. He left Kansas early in the morning of January 18, 1956. The accident occurred after sundown some miles south of Rapid City. Shortly after entering the Black Hills defendant while driving started into a curve covered with packed snow and skidded a "slight bit". This curve was posted for a forty-mile speed. After experiencing this first skid defendant reduced his speed below the posted limit and although he entered similar curves covered with snow he did not skid thereafter until the accident. Defendant testified that he came upon this curve where the accident took place after dark with car lights on, and the road appeared dry. We quote "And I started into the curve, and immediately upon turning my wheels, I felt the back wheels skid. As soon as I felt them skid, I turned into the skid to stop it. A few feet further on, I felt—I noticed when I was in this curve I was't turning enough, and that is the time I noticed the other two sets of headlights coming toward me. I tried to turn again and I felt myself skid again. To the best of my knowledge when I saw I was going to hit him, I tried to turn the third time, and I felt it skid a little bit then, right before I hit him". The collision took place on defendant's left-hand side of the highway. Defendant estimated his speed at about 35 miles an hour as he attempted to negotiate the curve and testified that he

did not apply his brakes because from experience he knew that would throw his car completely out of control. The first that defendant noticed there was ice on the road was when he got out of the car and "slipped and almost fell down". He testified that it was "clear ice" and that it had the appearance of the dry blacktop surface over which he had been driving.

The rule is established in this state that the mere fact an automobile skids on a slippery pavement does not in itself constitute negligence on the driver's part or render the res ipsa loquitur doctrine applicable. Zeigler v. Ryan, 65 S.D. 110, 271 N.W. 767; Vaughn v. Payne, 75 S.D. 292, 63 N.W.2d 798. "The inquiry in cases of skidding is as to the driver's conduct previous to such skidding. The speed of the automobile prior to the skidding and the care in handling the automobile, particularly in the application of brakes, are factors to be considered in determining whether or not there was an exercise of due care". Zeigler v. Ryan, supra [65 S.D. 110, 271 N.W. 769].

Of course the above evidence of the defendant is not undisputed, but it was for the jury to determine who to believe. When the defendant went into the skid immediately prior to the accident he was confronted with an emergency, if his testimony is accepted. We believe defendant was entitled to the emergency instruction. Under defendant's theory of the case it was for the jury to determine whether he caused the emergency by his own negligence, and if not, whether he acted reasonably after its occurrence. Without such instruction the jury, even though accepting defendant's testimony, could readily conclude under the court's instruction that simply being on the wrong side of the road at the time of the collision established negligence. The court instructed the jury regarding the duty to drive on the right half of the highway only as follows: "It is the duty of the driver of a motor vehicle to drive the same on his right half of the highway unless it is impracticable to drive on such side of the highway and except when overtaking and passing another vehicle; * * *".

This court has held that if plaintiff acts in good faith it is permissible to ask prospective jurors in cases of the

character here involved if they are interested as a stockholder or agent of any insurance company handling liability insurance. We have also held that where it is shown out of the jury's hearing that defendant is insured that the good faith in asking such a question is established. Morton v. Holscher, 60 S.D. 50, 243 N.W. 89; Simmons v. Leighton, 60 S.D. 524, 244 N.W. 883; Grant v. Matson, 68 S.D. 402, 3 N.W.2d 118; Schuetzle v. Nash-Finch Co., 72 S.D. 588, 38 N.W.2d 137.

The problem presented in propounding to prospective juror's questions similar to the question discussed in our cases has been the wellspring of judicial opinions throughout the years. Annotations 56 A.L.R. 1454; 74 A.L.R. 860; 95 A.L.R. 404; 4 A.L.R.2d 792. At the outset of this case, and not in the presence of the jury the defendant's counsel stated that the defendant was insured against liability by the Cimarron Insurance Company, a stock corporation. Counsel requested that plaintiff first ask the jury whether any member was a stockholder in any corporation and if the answer was negative then examination along this line cease. If there was an affirmative answer that plaintiff be permitted to pursue his inquiry regarding the type and nature of the corporation. We believe the form of question requested by defendant had it included being an agent or employee of any corporation would have served every legitimate purpose in this case.

It was not intended by our previous cases to hold that the questions therein propounded to prospective jurors were proper under all circumstances. Much must be left to the discretion of the trial court, but trial courts should guard against questions which serve no apparent purpose material to the issues involved, and which will tend to deny to a party a fair and impartial trial.

The judgment appealed from is reversed.

All the Judges concur.