ALLEN ORWICK v. DOUGLAS BELSHAN.

231 N. W. 2d 90.

June 13, 1975—No. 44177.

*Ross M. Muir,* for appellant.

*Leighton, Meany, Cotter & Enger* and *Terence L. Meany,* for respondent.

Heard before Kelly, Scott, and McRae, JJ., and considered and decided by the court en banc.

SCOTT, JUSTICE.

Defendant appeals from an order denying his motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. His argument, both orally and by brief, is directed solely to the question of whether a new trial should be granted. The issues raised by defendant can be categorized generally as (1) whether an inconsistency in the answers to questions posed in the special verdict requires a new trial; (2) whether the trial court erred in certain rulings during the course of trial; and (3) whether the trial court erred in its instructions to the jury. We remand with instructions that the inconsistent answer to question 4 of the special verdict be set aside to correspond with the answer to the question comparing the negligence of both parties.

From the record it appears that on June 10, 1970, the parties were engaged in a haying operation on the farm premises of defendant, Douglas Belshan. Plaintiff, Allen Orwick, was 23 years of age at the time of trial. He had been born and raised on a farm and was operating a farm with his father. Defendant was 31 years of age at the time of trial and operated his farm on a part-time basis. In the haying operation, plaintiff operated a mower

and defendant followed the mower with a tractor crimper. The latter piece of equipment broke down late in the afternoon of the day in question and plaintiff undertook to assist defendant in its repair. Plaintiff and defendant determined that to repair the crimper would require a new sealed bearing and collar, which items they obtained from an implement dealer. They then undertook to make the repairs. After removing a wheel from the crimper and placing a block under the shaft, they tried to remove the collar by turning it. When they could not turn it, plaintiff used a hammer and a 5/8-inch cold chisel to cut the collar from the shaft. Thereafter, defendant attempted to remove the bearing, which was frozen to the shaft, by using the hammer and chisel but was unable to cut the bearing because its metal was more highly tempered than the steel in the chisel. According to plaintiff, he was struck in the right eye by a piece of metal while defendant was trying to remove the bearing. The testimony with respect to what was said and done by the parties immediately before the incident was in conflict. Without detailing the parties' different versions of what transpired, it can be said that from all of the evidence factual issues arose with respect to the negligence of each of the parties and with respect to causation.

Plaintiff claimed and sought to prove at trial that defendant was negligent in attempting to cut the bearing from the shaft by the use of a cold chisel. The trial court submitted the case to the jury in a special verdict posing six questions.[1] By their an-

---

[1] The special verdict and answers were as follows:

"QUESTION: #1. State whether or not the defendant was negligent at the time and place in question.

"ANSWER: (Yes-No) Yes

"QUESTION: #2. If answer to #1 is No, do not answer this question. If the answer to #1 is YES, then answer this question: Was the defendant's negligence a proximate cause of plaintiff's injury?

"ANSWER: (Yes-No) Yes

"QUESTION: #3. State whether or not the plaintiff was negligent at the time and place in question.

"ANSWER: (Yes-No) Yes

"QUESTION: #4. If answer to #3 is No, do not answer this question.

swers the jury found in response to question 1, that defendant was negligent; in response to question 2, that his negligence was a proximate cause of the accident; in response to question 3, that plaintiff was negligent; in response to question 4, that the negligence of plaintiff was not a proximate cause of the accident; in response to question 5, that of all the negligence contributing to cause the accident, 78 percent was attributable to defendant and 22 percent was attributable to plaintiff; and in response to question 6, that plaintiff had suffered damages in the amount of $26,900.

As returned by the jury, there was an obvious inconsistency in the answers made to questions 4 and 5 of the special verdict. The negligence on the part of plaintiff found in response to question 3 could not at the same time be a contributing cause of the accident as found in question 5 and not be a proximate cause of the accident as found in question 4. The trial court, however, stated in its order for judgment that it was adopting the answers contained in the special verdict and ordered judgment in the sum of $26,900. In so doing, the trial court did not act to reconcile the inconsistency in the answers to questions 4 and 5—it simply ignored the answer to question 5. We do not know what prompted the trial court's order for judgment, for no memorandum accompanied that order or the order from which this appeal was taken.

■ The issue thus raised is whether, under the facts of this

---

If the answer to #3 is YES, then answer this question: Was the plaintiff's negligence a proximate cause of his own injuries?

"ANSWER: (Yes-No) No

"QUESTION: #5. Assuming the total negligence which contributed to produce the plaintiff's injuries to be 100%, then what percentage thereof do you attribute:

"ANSWER: (a) to defendant 78%
(b) to plaintiff 22%

"QUESTION: #6. State the total amount of damages suffered by plaintiff.

"ANSWER: $26,900.00"

case, a finding by a jury that a party's negligence is not a proximate cause of an accident and a later finding, on the issue of comparative negligence, that such negligence contributed to cause the accident are so irreconcilable or inconsistent as to require a new trial. This particular inconsistency, being one created by answers to a causation question and the comparative negligence question, raises an issue of first impression in Minnesota. However, we find that our past decisions involving the reconciliation of answers to questions in a special verdict with the evidence in the case point the way to the rule hereinafter enunciated.

We have held that the findings of a jury under a special verdict are binding on the court. Whelan v. Gould, 259 Minn. 203, 106 N. W. 2d 893 (1960) ; Wormsbecker v. Donovan Const. Co. 247 Minn. 32, 76 N. W. 2d 643 (1956) ; Sorlie v. Thomas, 235 Minn. 509, 51 N. W. 2d 592 (1952) ; Employers Mutual Gas Co. v. Chicago, St. P., M. & O. Ry. Co. 235 Minn. 304, 50 N. W. 2d 689 (1951). However, we have also held that the trial court has the same authority to set aside and change an answer to a question in a special verdict as it has to grant judgment notwithstanding a general verdict, that is, where the evidence requires the change as a matter of law. Strandjord v. Exley, 287 Minn. 145, 177 N. W. 2d 48 (1970) ; Hill v. Wilmington Chemical Corp. 279 Minn. 336, 156 N. W. 2d 898 (1968). In Reese v. Henke, 277 Minn. 151, 152 N. W. 2d 63 (1967), we acted to change the answer to a question in a special verdict where the trial court had declined to do so and where we found that the evidence required such change as a matter of law. The test applied, be it on the trial or appellate level, is whether or not the evidence in the case establishes as a matter of law that a jury's answer to a question must be changed.

In the instant case, the trial court declined to reconcile the inconsistency between the answers to questions 4 and 5. Pursuant to the standard discussed above, we conclude that the evidence as presented does establish, as a matter of law, that the plaintiff's negligence was a proximate cause of his own injuries.

Therefore, we hold that where the jury in a special verdict finds that a party's negligence was not a proximate cause of his own injuries, but thereafter, in the comparative negligence question, attributes a portion of the total causal negligence to that party, and the evidence establishes as a matter of law that his negligence was a proximate cause of his injuries, the court should, consistent with the authority set forth above, set aside the answer to the question which found that the plaintiff's negligence was not causal and insert an affirmative answer.[2]

The rule herein announced is in accord with rules adopted by the Wisconsin Supreme Court for an inconsistency in a special verdict of the type here involved. Jahnke v. Smith, 56 Wis. 2d 642, 203 N. W. 2d 67 (1973) ; Hillstead v. Shaw, 34 Wis. 2d 643, 150 N. W. 2d 313 (1967) ; Statz v. Pohl, 266 Wis. 23, 62 N. W. 2d 556, rehearing denied, 63 N. W. 2d 711 (1954).[3]

---

[2] Adoption of this rule is not intended in any way to limit the trial court in its utilization of the jury to resolve factual disputes. Where the inconsistency in the answers on a special verdict is noted before the jury has been discharged, the trial court should point out the inconsistency and order the jury to resume deliberations to the end that inconsistent answers be reconciled.

[3] The Wisconsin rules, as enunciated in Statz v. Pohl, 266 Wis. 23, 29, 62 N. W. 2d 556, 559, are as follows: "(1) If the issue of causal negligence is for the jury and the party inquired about is exonerated but the jury in its comparison of negligence erroneously attributes to such party some degree of causal negligence, the verdict is inconsistent, and a new trial must be granted;

"(2) If it be determined that the party inquired about is free from causal negligence as a matter of law and the jury has exonerated him but has also attributed to him some degree of causal negligence, then the court should strike the answer to the question on comparison as surplusage and grant judgment accordingly."

After rehearing, the Wisconsin court enunciated a third rule as follows: "(3) If but one element of negligence is submitted to the jury and the court can find as a matter of law that the party inquired about in the question is guilty of causal negligence and the jury finds that he is not, and in answer to the question on comparative negligence attributes to him some degree of causal negligence, the court should

■ In connection with the issue raised by the inconsistent answers in the verdict, it should be noted that in neither the special verdict form used in this case nor in the court's instructions was the jury told the conditions under which they were to answer the comparative negligence question. They are, of course, to do so only where by their answers to previous questions they have found causative negligence on the part of two or more persons. Either as a preface to the comparative negligence question in the special verdict[4] or in the court's instructions, and preferably in both, the jury should be told the previous answers or findings which make necessary an answer to the comparative negligence question.

■ There are other issues raised by defendant, and although we have decided that the inconsistent answer to question 4 must be changed on the theory espoused herein, we feel that some of the other matters argued merit comment.

Much of the defendant's argument, both oral and in his brief, relates to the expert testimony of the witness Sydney Magnuson; to a courtroom demonstration conducted in connection therewith; and to the conduct of plaintiff's counsel immediately before the demonstration. As to the last, no comment is necessary, for it is certain that similar conduct will not occur again.

Defendant's argument that this is not a case for expert testimony lacks merit. As noted earlier, the theory upon which this case was tried was that defendant was negligent in using a cold chisel in an attempt to remove a burned-out bearing from the shaft of a piece of farm equipment. It was claimed that this conduct was negligent because a cold chisel is made of softer steel

---

change the answer to the question which inquires as to his conduct from 'No' to 'Yes' and permit the jury's comparison to stand with judgment accordingly." 266 Wis. 23, 32a, 63 N. W. 2d 711, 712.

[4] See 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II 148 and 202, for illustrative prefatory statements used in conjunction with comparative negligence questions in the special verdict.

than a bearing and its use on the latter will result in metal particles being projected through the air, thereby endangering persons in the vicinity. Obviously, plaintiff's case requires establishment of facts which are not of common knowledge. The testimony of a qualified expert could be expected to assist the jury in its determination of the issues in the case, and this is the oft-repeated test applied by this court.[5] Whether that test has been met generally rests in the sound discretion of the trial court. We find no abuse of discretion in this aspect of the present case.

Defendant also objected to Magnuson's being permitted to testify as an expert, but in his brief the arguments are directed to certain items of testimony by this witness rather than to his qualifications. Although this witness was not a metallurgist, he did bring to the courtroom many years of experience as a farmer and extensive experience in the repair and maintenance of farm machinery, including the replacing of burned-out bearings "hundreds of times." We are satisfied that the trial court did not abuse its discretion in determining that Magnuson possessed the requisite qualifications to testify as an expert.[6] However, we agree with defendant that the witness should not have been permitted, as an expert or otherwise, to testify as to what 25 other farmers in the area knew about burned-out bearings. State v. Hines, 270 Minn. 30, 133 N. W. 2d 371 (1964). If this was an attempt to establish a custom or practice among farmers,[7] it was an inappropriate and unacceptable means of doing so. 7A Dunnell, Dig. (3 ed.) § 3317; 29 Am. Jur. 2d, Evidence, § 318.

■ During the course of Magnuson's testimony, plaintiff was permitted to carry out a demonstration designed to show the jury what happens when a cold chisel is used on a collar and a bearing. For this purpose, plaintiff furnished a bearing, collar, chisel, and hammer of the types being used by the parties at the time of the accident. Plaintiff, in line with his contention that the use

---

[5] 7A Dunnell, Dig. (3 ed.) §§ 3324, 3325.

[6] 7A Dunnell, Dig. (3 ed.) § 3335.

[7] 7A Dunnell, Dig. (3 ed.) § 3332 (1).

of a chisel in attempting to cut a bearing entailed an unreasonable risk of harm to those in the vicinity of the operation, furnished safety glasses for use by the members of the jury. The trial court informed the jury that they were free to use the glasses if they wished.

We have held that the allowance of experiments or demonstrations in the presence of the jury and the admission of evidence of experiments conducted out of the presence of the jury, when they are made under conditions and circumstances substantially similar to those existing in the case at issue, rests in the sound discretion of the trial court. State v. Darrow, 287 Minn. 230, 177 N. W. 2d 778 (1970); State v. DeZeler, 230 Minn. 39, 41 N. W. 2d 313 (1950); 7A Dunnell, Dig. (3 ed.) §§ 3246 and 3261. In the present case, an adequate foundation had been laid for permitting the demonstration in the courtroom or for admitting evidence of an experiment performed out of the presence of the jury. However, we hold that under circumstances similar to those of this case, as a general rule the trial court's discretion should be exercised in favor of an experiment performed outside the presence of the jury. Where, as here, it is contended that the conduct of an experiment or a demonstration designed to show how an accident happened is so fraught with peril to those in the vicinity as to require protective equipment for use by the jury and such equipment was not used at the time of the accident, there are cogent reasons for not permitting the experiment or demonstration in the courtroom. In the first place, there can be no justification for unnecessarily subjecting persons in the courtroom, including jurors, to any real danger of physical harm. Nor should there be cast upon the trial judge the responsibility for determining whether proposed safeguards are adequate to meet the danger posed. On the other hand, if little or no real danger is posed by the conduct of the demonstration or experiment, the use of safety equipment would permit and possibly compel a false inference on a vital issue. Where the parties, or one of them, at the time of an accident were not using safety equipment and the

trial judge requires or suggests the use of such equipment in the conduct of a demonstration showing how the accident happened, the jury is almost certain to infer from the use of the safety equipment that one or more of the parties was negligent in failing to use the equipment or in failing to furnish it to others. That inference may or may not be a valid one, but it cannot properly rest upon the fact that the safety equipment was furnished to the jury. However, although the court erred in requiring the equipment, we think that error was not prejudicial.

■ Defendant contends that the trial court erred in denying his request for two instructions. In the first, defendant requested the court to instruct the jury that the mere fact an accident has happened does not of itself mean that anyone has been negligent.[8] This request was refused. Where objection was made to the giving of a like instruction in Kuether v. Locke, 261 Minn. 41, 51, 110 N. W. 2d 539, 546 (1961), and where, as in the present case, the plaintiff claimed the instruction related to unavoidable accident, we said:

"* * * Except where the doctrine of res ipsa loquitur is involved, this admonition is almost routinely given in negligence cases. It is a proper cautionary instruction which has to do with the burden of proof rather than unavoidable accident."

Plaintiff cites Bastianson v. Forschen, 293 Minn. 31, 196 N. W. 2d 451 (1972), in support of his argument that the trial court properly refused to give the requested instruction in this case. But in Bastianson we were concerned with an instruction which combined the request here made with substantial additions, making it an "unavoidable accident" instruction. We did not intimate any change in our view expressed in Kuether that the instruction here requested is a proper cautionary instruction except where the doctrine of res ipsa loquitur is involved.

---

[8] 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II 99. This instruction appeared as Instruction 71 in Minnesota Jury Instruction Guides (1963).

■ Defendant also requested that the trial court instruct on the issue of causation in terms of "direct" cause as set forth in 4 Hetland & Adamson, Minnesota Practice, Jury Instruction Guides (2 ed.) JIG II 140.[9] The trial court declined to do so and instructed the jury as follows:

"* * * [B]y proximate cause is meant the direct or immediate cause, or the natural sequence of events without the intervention of another independent and efficient cause. Proximate cause is that which in a natural and continuous sequence, unbroken by any efficient intervening cause produces the injuries and without which the result would not have occurred."

When asked to repeat that definition, the trial court did so and added:

"* * * [c]onsequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

Technically, this instruction is correct. The last sentence thereof sets forth the definition of proximate cause which was first formulated in Mr. Justice Mitchell's opinion in Christianson v. Chicago, St. P., M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640 (1896), and has had our express approval in later cases.[10] It continues to have our approval. But when combined, as here, with other definitions of proximate cause, all of which definitions are in terms of negativing superseding causes, the result may be unnecessarily abstruse and confusing. Particularly is this true where there is no issue of superseding cause in the case. That

---

[9] JIG II 140 reads: "A direct cause is a cause which had a substantial part in bringing about the (harm) (accident) (injury) (collision) (occurrence) [either immediately or through happenings which follow one after another]."

[10] Dellwo v. Pearson, 259 Minn. 452, 107 N. W. 2d 859 (1961); Seward v. Minneapolis St. Ry. Co. 222 Minn. 454, 25 N. W. 2d 221 (1946).

the instructions on proximate cause were confusing to the jury in this case is amply demonstrated by what happened. After hearing the trial court's definition of proximate cause before beginning their deliberations, the jurors deliberated for some period of time and then requested further instructions on the issue of causation. The definition as set forth above was read to the jury and they asked that it be given a third time. Thereafter, the jury returned a special verdict which was perverse in that questions relating to causation were wholly inconsistent. Obviously, the jury had difficulty in trying to understand proximate cause on the basis of the trial court's definition. JIG II 140 affords an accurate and much simpler definition and, when used in conjunction with JIG II 141, covering concurring cause, and JIG II 142, covering superseding cause, in those cases where the latter may be applicable, provides a preferable means of submitting the issue of causation to the jury.

Remanded with instructions that the inconsistent answer to question 4 of the special verdict be set aside, that an answer be inserted which is consistent with the answer to the question comparing the negligence of both parties, and that judgment be entered accordingly.