**Linda DEL VECCHIO, as Special Administratrix of the Estate of Jonathan Ray Del Vecchio, Deceased, Plaintiff and Appellant,**

v.

**Ennis LUND, Defendant and Appellee.**

**No. 12866.**

Supreme Court of South Dakota.

Argued April 18, 1980.

Decided June 18, 1980.

Michael L. Luce and Carleton R. Hoy of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for plaintiff and appellant.

Steve Jorgensen, Sioux Falls, for defendant and appellee.

DUNN, Justice.

Plaintiff Linda Del Vecchio appeals from a judgment entered by the Circuit Court of the Second Judicial Circuit in favor of defendant Ennis Lund in an action for the wrongful death of her husband. We reverse and remand for new trial.

Plaintiff's husband was struck and killed by a motorboat operated by defendant on Sunday afternoon, June 25, 1978. The accident occurred at approximately 2 p. m. on Wall Lake, which is several miles west of

Sioux Falls, South Dakota. The decedent was preparing to water ski behind a boat operated by Gary Verhey at the time he was struck by defendant's motorboat.

Defendant had planned to operate his boat to allow his children and his brother's children to water ski. Defendant abandoned those plans, however, when he had to wait forty-five minutes before placing his boat in the water and after a circle around the lake in his boat convinced him that the lake was too congested with boats and too dangerous for the children to water ski. He returned to the loading area to remove his boat from the water, but the congestion of boats was such that there was no room to load the boat. He decided to circle the lake once more in the hope that the congestion would be alleviated upon his return.

Defendant testified that as he proceeded around the lake there were boats pulling skiers on either side of his boat and that he tried to maintain the same speed as the rest of the boat traffic. He described the congestion as complete bedlam. Defendant's fifteen-year-old daughter was in the front of the boat to watch for possible danger. She confirmed defendant's statement that there were boats on either side of their boat, but plaintiff's witnesses stated that there were no other boats in the "immediate vicinity." Defendant testified that he was trying to keep his boat in a path between the boats on either side.

Approximately four or five seconds before impact, both defendant and his daughter noticed the occupants of the Verhey boat waving their hands and shouting. Defendant's daughter testified that the waving distracted her and that she initially thought that these people were just being friendly. She prepared to wave back at them. A split second later she saw the decedent in the water and hollered for her father to stop. Defendant also caught a glimpse of the decedent in the water, turned his boat to the left, and cut the

engine at approximately the same time as the boat struck decedent. Defendant testified that he was faced with a split-second decision whether to turn left or right, and he stated that he did not turn to the right because he feared that he would hit the Verhey boat.

An eyewitness who was standing on a dock approximately 100–125 yards away from the point of impact stated that defendant's boat was traveling 20–25 miles per hour immediately before the accident. This witness and others stated that the large number of boats on the lake created waves of six to ten inches. Testimony indicated that about ten inches of decedent's head was showing out of the water and that his hands were visible as he held on to the tow rope. There was conflicting testimony regarding whether one of decedent's ski tips was also showing and whether his shoulders were visible.

The first question that presents itself is whether the instruction on "unavoidable accident" was justified.[1] On two previous occasions we have declined to reverse a jury verdict where such an instruction was given. *Herman v. Spiegler*, 82 S.D. 339, 145 N.W.2d 916 (1966); *Cordell v. Scott*, 79 S.D. 316, 111 N.W.2d 594 (1961). In *Meyer v. Johnson*, 254 N.W.2d 107, 110 (S.D.1977), we found that the "unavoidable accident" instruction was improper because the facts of the case did not call for such an instruction. The *Meyer* case set out the guideline established in *Cordell v. Scott* at 79 S.D. 322–323, 111 N.W.2d 598:

> Although we believe unavoidable accident instructions should be restrictively used we do not favor * * * total exclusion. In the ordinary negligence action the jury is adequately instructed on the ultimate issues by instructions on negligence, contributory negligence, burden of proof, and proximate cause. Further instruction on unavoidable accident usually is unnecessary. *Such instruction*

---

1. The instruction read: "You are further instructed that if decedent's injuries came about as the result of an unavoidable accident, the plaintiff is precluded from recovery. Such an accident is one which comes about under circumstances in which there was no negligence which proximately caused the injury.

*may properly be given in those cases where there is evidence that something other than the negligence of one of the parties caused the mishap.* It is particularly apt where the further element of "surprise" is present such as the sudden and unexpected presence of ice, the blowout of a tire, the malfunction of brakes, or other mechanical failure. (emphasis added)

Taking the defendant's statement of the facts, we feel that there was sufficient evidence to take this case out of the limited situation where this court has approved an "unavoidable accident" instruction. Defendant freely admitted that the lake was congested with boats and water skiers. In fact, he was about to leave the lake because he considered it too dangerous for his children to ski. The lake was also rough, with waves estimated to be from six to ten inches high, and this interfered with vision on the water. Yet defendant came into this accident scene near the shore line with boats on both sides of him—some pulling skiers—at a speed of 20 to 25 miles per hour. True, the evidence of witnesses was to the effect that the boat was traveling at a reasonable speed, and that is probably true without considering defendant's knowledge of the dangers involved. It is about the minimum speed that one can keep a skier up on the water, and defendant indicated that he was operating his boat at about the same speed as parallel boats that were towing skiers. Thus the casual witness would see nothing unusual about defendant's speed. But the legal question, which the witnesses could not be expected to consider in judging whether the speed was reasonable, was whether the defendant, with his admitted awareness of the congestion of boats and skiers and the danger that this congestion entailed, was operating his boat at a reasonable speed as he approached the accident scene. In recognition of this danger, defendant had stationed his fifteen-year-old daughter in the bow of the boat as a lookout. This is commendable, but at a

speed of 20 to 25 miles per hour in the midst of this congestion, her signal of alarm could not be passed on to him in time to avoid an accident. He was admittedly "killing time" until the boat ramp cleared so he could leave, and in view of his knowledge of the danger, it would seem that a reasonable man would have severely reduced his speed to a point where the boat was completely under control.

In this case we are not bound by a presumption of a jury finding as to the facts of the case. We must consider this issue from the standpoint of what the trial judge knew from the evidence at the time he gave this instruction.

We are convinced that under the law and the facts of this case, the unavoidable accident instruction should not have been given. In so deciding, we do not intimate that the defendant was guilty of negligence as a matter of law. We simply state that under the defendant's version of the facts there was sufficient evidence of negligence to foreclose the giving of an "unavoidable accident" instruction under our case law. In light of the evidence presented, this instruction unduly and improperly emphasized defendant's position.

The next issue is whether the giving of the "mere fact of an accident" instruction was proper.[2] In *Orwick v. Belshan*, 304 Minn. 338, 231 N.W.2d 90 (1975), citing *Kuether v. Locke*, 261 Minn. 41, 110 N.W.2d 539 (1961), the court stated that such an instruction is almost routinely given in negligence cases except where the doctrine of res ipsa loquitur is involved. The court further explained that the "mere fact of an accident" instruction is proper as a cautionary measure because it deals with burden of proof rather than unavoidable accident. The *Orwick* court additionally cited previous Minnesota cases where additional language caused a "mere fact of an accident" instruction to become, in effect, an instruction on "unavoidable accident." We agree

2. The instruction read: "The mere fact that an accident happened and a party sustained damages because of such accident, in and of itself, does not give rise to any inference that it was caused by negligence of anyone."

with the analysis in *Orwick*, and after foreclosing the giving of an "unavoidable accident" instruction, we find nothing objectionable to giving the "mere fact of an accident" instruction upon retrial.

■ Thirdly, we are asked to find that the giving of the "sudden emergency" instruction was improper.[3] We agree that the instruction given here was improper, but only because the instruction was incomplete. The instruction makes no mention of the fact that a party seeking refuge under the "sudden emergency" doctrine must not be the party whose actions created the emergency. This would be a more accurate statement of the law. *Meyer v. Johnson*, supra. An instruction with this addition would be within the discretion of the trial court under the evidence presented in this case.

■ Finally, plaintiff contends that the trial court erred in not giving an instruction regarding proper lookout in which the final sentence read, "[t]he boat operator is chargeable with the knowledge that such a lookout would disclose."[4] The trial court, however, did give a different instruction regarding proper lookout that was also requested by plaintiff, but which did not contain the sentence quoted above.[5] We find no error in giving this latter instruction only, especially when it was given verbatim as plaintiff requested it.

The judgment of the trial court is reversed and the matter is remanded for new trial.

**3.** *The instruction read:* "When without any negligence on his part, a person is suddenly confronted with a situation of imminent danger, requiring immediate action to avert an accident, he is not guilty of negligence if he makes a choice such as might be anticipated would be made by a person of ordinary prudence in the same situation. This is the case even if it develops that some other choice would have been better."

**4.** The instruction read: "You are instructed that one operating a boat in waters frequented by swimmers, boaters and water skiers is obligated to maintain such lookout as a reasonably prudent person would exercise to discover and

MORGAN and FOSHEIM, JJ., concur.

WOLLMAN, C. J., and HENDERSON, J., concur in part and dissent in part.

WOLLMAN, Chief Justice (concurring in part and dissenting in part).

I agree that the trial court erred in giving the unavoidable accident instruction. I would also hold, however, that the trial court erred in giving the sudden emergency instruction. The picture painted by defendant's own testimony precludes him from claiming the benefit of the sudden emergency doctrine. He was abandoning the lake because it was too dangerous for skiing. A reasonable person would have realized that under these conditions it would be inevitable that somewhere on the lake there would be a skier almost totally submerged behind a towing boat, a condition that would call for the exercise of the greatest of caution by the operators of other boats, given the difficulty of seeing such a submerged skier in the waves created by the wakes of passing boats.

I find no fault with the sudden emergency instruction itself, given the fact that it is taken verbatim from South Dakota Pattern Jury Instruction (Civil) 12.03. I see nothing in our decision in *Meyer v. Johnson*, 254 N.W.2d 107 (S.D. 1977), that finds fault with this instruction. In *Meyer*, we held that the trial court should have given a legal excuse instruction based upon South Dakota Pattern Jury Instruction 60.00.

I am authorized to state that Justice Henderson, joins in this concurrence in part and dissents in part.

avoid injury to others lawfully using the waters. The boat operator is chargeable with the knowledge that such a lookout would disclose."

**5.** The instruction read: "The law requires that all boats at all times keep a proper lookout. What is an adequate lookout is a question of fact to be determined in each case under the specific circumstances and facts involved. A lookout should be maintained in every direction in which danger may reasonably be expected to arise, and the quality and diligence of a lookout required depends upon the degree and imminence of danger reasonably to be anticipated."