James E. HOFFMAN, d/b/a under the firm name and style of Hoffman Trucking, Plaintiff and Appellant,

v.

Bruce R. ROYER, Defendant and Appellee,

and

Fred KOST, Plaintiff and Appellant,

v.

Bruce R. ROYER, Defendant and Appellee.

No. 14411.

Supreme Court of South Dakota.

Considered on Briefs April 19, 1984.

Decided Dec. 12, 1984.

R.C. Riter and Robert C. Riter, Jr., of Riter, Mayer, Hofer & Riter, Pierre, for plaintiffs and appellants.

Charles M. Thompson of May, Adam, Gerdes & Thompson, Pierre, for defendants and appellees.

FOSHEIM, Chief Justice.

Plaintiffs appeal from a judgment entered on a verdict on defendant's counterclaim. We affirm in part, reverse in part and remand.

Plaintiff James E. Hoffman (Hoffman) doing business as Hoffman Trucking, brought an action against defendant, Bruce E. Royer (Royer) for damages to Hoffman's cattle truck resulting from a collision between the truck and Royer's vehicle. Plaintiff Fred Kost (Kost) brought an action against Royer for damages to certain of his cattle that were being hauled for him by Hoffman at the time of the accident. Royer filed a counterclaim against Hoffman for the damages resulting to Royer's vehicle in the accident. These actions were consolidated for trial and appeal. The jury found in favor of Royer on his counterclaim and against plaintiffs on their complaints.

Appellants contend the trial court erred by (1) giving an unavoidable accident instruction, (2) refusing to find that Royer was guilty of negligence as a matter of law, and (3) not allowing them to question prospective jurors concerning liability insurance.

On appeal, we review the evidence in the light most favorable to the prevailing party and resolve conflicting evidence in favor of the verdict. *See, e.g., Stoltz v. Stonecypher,* 336 N.W.2d 654 (S.D.1983); *Zee v. Assam,* 336 N.W.2d 162 (S.D.1983); *Barnhart v. Ahlers,* 79 S.D. 186, 110 N.W.2d 125 (1961); *Hullander v. McIntyre,* 78 S.D. 453, 104 N.W.2d 40 (1960).

The accident that spawned these lawsuits occurred at approximately 2:00 p.m. on November 21, 1981, on U.S. Highway 83 approximately ten miles south of Murdo. Defendant Royer, his brother Doug, and a friend, Pete Kerns, were hunting deer in that area. They drove separate vehicles. Kerns proceeded onto Highway 83, followed by Royer, who in turn was followed by his brother Doug. The three drove north about four-tenths of a mile at a speed of thirty-five to forty miles per hour. In preparation for a left turn across Highway 83, each driver activated a left turn signal. Kerns completed his turn and was in the approach area when the collision occurred between Hoffman's truck and Royer's vehicle. Royer, who had turned on his left turn signal, checked his rear view mirror and saw his brother's vehicle behind him but nothing else. He started to make the turn, whereupon he heard the sound of a truck horn. He was some three-fourths through the turn when his vehicle was struck by Hoffman's truck.

Clayton Neuhauser, the driver of Hoffman's truck, testified that he had just crested the hill north of the White River crossing and was gaining speed going downhill when he observed the three vehicles ahead of him. He moved his truck into the left-hand lane, preparing to pass the three vehicles. Upon observing Kern's vehicle make the left-hand turn, Neuhauser "applied some brake to slow me down ...." As he drew closer to the remaining two vehicles, Royer commenced his left-hand turn, whereupon Neuhauser stepped

on his brakes "real hard," sounded his air horn, and turned sharply to the right to try to get back into the right-hand lane. The impact between the two vehicles occurred near the center of the highway just below the crest of the hill.

Neuhauser's truck was followed by two other trucks all of which were traveling as a convoy. Immediately after the accident, Neuhauser was observed standing on the passenger door of the over-turned truck tractor and fumbling around on the floorboard for some papers. He was also observed writing in what appeared to be a log book of the type the Interstate Commerce Commission requires of all commercial truckers. At the time he was doing this, there was diesel fuel leaking from the fuel tanks of the over-turned truck. Neuhauser was also overheard saying to the two other truckers that "we stopped in White River and slept two hours." Neuhauser's testimony at trial was that he had not stopped to rest at White River either on the way to pick up Kost's cattle or on the return trip immediately prior to the accident. We turn now to the issues.

We agree the trial court should not have given an unavoidable accident instruction to the jury.

At trial, the Court gave the following instruction:

If you should find that the accident which is the subject of this lawsuit was an unavoidable accident, then, you shall return a verdict against all claimants and in favor of all defending parties on the various claims and award no damages.

In *Meyer v. Johnson*, 254 N.W.2d 107, 110 (S.D.1977), and in *Del Vecchio v. Lund*, 293 N.W.2d 474 (S.D.1980), we reaffirmed the guidelines established in *Cordell v. Scott*, 79 S.D. 316, 322–323, 111 N.W.2d 594, 598 (1961) concerning the unavoidable accident instruction:

Although we believe unavoidable accident instructions should be restrictively used we do not favor * * * total exclusion. In the ordinary negligence action the jury is adequately instructed on the ultimate issues by instructions on negligence, contributory negligence, burden of proof, and proximate cause. Further instructions on unavoidable accident usually is unnecessary. Such *instruction may properly be given in those cases where there is evidence that something other than the negligence of one of the parties caused the mishap.* It is particularly apt where the further element of "surprise" is present such as the sudden and unexpected presence of ice, the blowout of a tire, the malfunction of brakes, or other mechanical failure. (emphasis added)

As in *Meyer, Cordell* and *Del Vecchio*, the unavoidable accident instruction was improper under the facts of this case and it very likely affected the verdict of the jury. We accordingly reverse on that issue and remand for a new trial.

Appellant next contends the trial court erred in denying plaintiffs' motion to instruct the jury that Royer was guilty of negligence as a matter of law, thereby removing that issue from the jury's consideration.

SDCL 32–26–22 provides:

The driver of any vehicle upon a highway before starting, stopping, or turning from a direct line shall first see that such movement can be made in safety and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in § 32–26–23 plainly visible to the driver of such other vehicle of the intention to make such movement.

SDCL 32–26–23 provides that the signal required by SDCL 32–26–22 may be given either by means of the hand and arm or by an approved mechanical or electrical signal device.

In referring to the statute now found at SDCL 32–26–22, the court in *Barnhart v. Ahlers*, 79 S.D. 186, 110 N.W.2d 125 (1961), stated:

Statutes of this nature must be construed reasonably and realistically in the light of modern traffic movement. Left turns are not prohibited unless they can be made in absolute safety and free from all danger. Our statute simply means that before turning on a public highway, and while turning, a motorist must exercise due care under the circumstances to see that the turning movement can be made with reasonable safety to himself and others who might be affected thereby.

79 S.D. at 189, 110 N.W.2d at 127. The Court held that under the circumstances presented in that case the plaintiff was guilty of contributory negligence in failing to look, or look effectively, before and after making the left turn in the middle of the block on a street in Sioux Falls; noting that a turn of this nature "has been described as a most dangerous movement." 79 S.D. at 189, 110 N.W.2d at 126.

In *Jorgenson v. Dronebarger*, 82 S.D. 213, 218, 143 N.W.2d 869, 872 (1966), we held that

[w]e are unable to read into the words of the statute, i.e., "shall first see that such movement can be made in safety", a connotation that a lefthand turn is "prohibited unless it can be made in absolute safety and free from all danger".

In contrast to the facts in *Flanagan v. Slattery*, 74 S.D. 92, 49 N.W.2d 27 (1951), where the party making the left turn failed to give any signal of her intention to do so, in the case before us there is evidence that Royer's left turn signal was functioning and that the left turn signals on the vehicles preceding and following were also operating prior to the collision. Royer looked in his rear view mirror to check for following traffic prior to starting his left turn.

■ As we held in *Stoltz v. Stonecypher*, 336 N.W.2d 654 (S.D.1983), "Questions relating to negligence and contributory negligence are questions of fact for determination by the jury in all except the rarest of instances." 336 N.W.2d at 657. We conclude that in the circumstances presented by the instant case, it was for the jury to determine whether Royer was guilty of negligence in the manner in which he attempted to make the left turn. Accordingly, the trial court did not err in denying plaintiffs' motion that it rule as a matter of law that Royer was guilty of negligence.

At the pretrial conference, plaintiff's counsel advised the trial court that on voir dire examination, they expected to inquire whether any juror had interests in insurance. *See, Bartlett v. Gregg*, 77 S.D. 406, 92 N.W.2d 654 (1958). At an in-chambers conference immediately prior to trial, one of plaintiffs' counsel filed an affidavit stating that counsel was not personally acquainted with any of the prospective jurors and that Royer was insured at the time of the accident by Western Casualty Insurance Company. The affidavit renewed counsels' request that they be permitted to inquire of the prospective jurors whether any of them were interested as a stockholder or agent of any insurance company handling liability insurance and that counsel would be permitted to inquire as to the name of the insurance company if any juror or replied in the affirmative. The trial court denied the motion.

In *Western Surety Co. v. Addy*, 73 S.D. 322, 42 N.W.2d 660 (1950); *Grant v. Matson*, 68 S.D. 402, 3 N.W.2d 118 (1942); *Simmons v. Leighton*, 60 S.D. 524, 244 N.W. 883 (1932); and *Morton v. Holscher*, 60 S.D. 50, 243 N.W. 89 (1932), this Court held that it was permissible for the trial court to permit counsel to inquire on voir dire whether any juror was interested as a stockholder or agent of any insurance company handling liability insurance. *Cf. O'Connor v. Sioux Falls Motor Co.*, 57 S.D. 397, 232 N.W. 904 (1930). In *Schuetzle v. Nash-Finch Co.*, 72 S.D. 588, 38 N.W.2d 137 (1949), the Court followed the *Morton, Simmons*, and *Grant* cases and emphasized that the plaintiff who desires to interrogate jurors regarding their interest in an insurance company must first show that they are acting in good faith. In *Jacobson v. Coady*, 77 S.D. 1, 84 N.W.2d 1 (1957), defense counsel requested that

plaintiff's counsel be restricted to inquiring whether any member of the jury was a stockholder in any corporation and that if the answer was in the negative, examination along that line should cease. On appeal, this Court stated that had the form of question requested by defense counsel included the additional relationships of agent or employee, the question "would have served every legitimate purpose in this case." 77 S.D. at 4, 84 N.W.2d at 3. After alluding to the holdings in the above-cited cases, the court stated:

> It was not intended by our previous cases to hold that the questions therein propounded to prospective jurors were proper under all circumstances. Much must be left to the discretion of the trial court, but trial courts should guard against questions which serve no apparent purpose material to the issues involved, and which will tend to deny to a party a fair and impartial trial.

77 S.D. at 4, 84 N.W.2d at 3. In *Bartlett v. Gregg, supra,* the trial court permitted plaintiff's counsel to inquire whether any prospective juror was an officer, director, stockholder, or agent of any insurance company. In holding that this ruling was not error, this court stated:

> It was not our intent, however, in the Jacobson case to hold that the form of question as requested by defendant therein with the additions suggested by us would be the only proper form of question under all circumstances. The matter of determining good faith of counsel in his examination of prospective jurors must of necessity rest within the sound discretion of the trial court. The trial court knows the attorneys, usually most of the jury panel, and the type of community in which the trial is held. From this knowledge the trial court is better enabled to determine the good faith of counsel than we can from the printed record. The trial court can, of course, abuse its discretion and in a proper case we would not hesitate to so find. We find no such abuse of discretion here.

77 S.D. at 415, 92 N.W.2d at 659.

In *McDonnel v. Lakings,* 78 S.D. 195, 99 N.W.2d 799 (1960), the plaintiff contended on appeal that the trial court had erred in limiting his voir dire examination to the prospective jurors' interest in and connection with corporations, insurance businesses, and companies. Noting that the trial court had permitted plaintiff to ask pertinent questions regarding the jurors' membership in the mutual insurance company that provided coverage to the defendant in that case, the court concluded that the trial court had not abused its discretion in so limiting the voir dire examination.

 The fact that a defendant has liability insurance is not a relevant issue in a personal injury action. It is therefore not admissible evidence. *Jirsa v. Ice,* 88 S.D. 209, 217 N.W.2d 465 (1974); *Behrens v. Nelson,* 86 S.D. 312, 195 N.W.2d 140 (1972); *Zeller v. Pikovsky,* 64 S.D. 544, 268 N.W. 729 (1936); *Zeigler v. Ryan,* 63 S.D. 607, 262 N.W. 200 (1935). In light of this long-standing rule, and in order to resolve what appears to be a conflict between our holdings in *Jacobson v. Coady* and *Bartlett v. Gregg, supra,* it is now established that in personal injury, wrongful death, and property damage claims tried following the date of our mandate in this case the parties should be restricted to inquiring on voir dire whether any member of the jury panel is an officer, director, employee, agent, or stockholder in any corporation. If there are no affirmative responses to this question, there should be no further questioning along this line. If there is an affirmative response, counsel should be permitted to inquire regarding the nature of the relationship and the name of the corporation. This procedure should provide adequate information to the parties without injecting the element of insurance in a situation in which there is absolutely no justification for it.

To the extent that our decisions in *McDonnel v. Lakings, Bartlett v. Gregg, Schuetzle v. Nash-Finch Co., Western Surety Co. v. Addy, Grant v. Matson, Simmons v. Leighton, Morton v. Holscher,* and *O'Connor v. Sioux Falls Motor*

*Co., supra,* conflict with this announcement, they are expressly modified.

■ Consistent with our holding, we affirm the trial court's denial of plaintiffs' motion to make inquiry of the prospective jurors regarding their interest in insurance companies.

The judgment is affirmed in part, reversed in part and remanded.

MORGAN and HENDERSON, JJ., concur.

WOLLMAN, J., specially concurs in part and dissents in part.

DUNN, Retired J., concurs in part and dissents in part.

WUEST, Circuit Judge, acting as Supreme Court Justice, did not participate.

WOLLMAN, Justice (specially concurring in part, dissenting in part).

Given the peculiar wording of the unavoidable accident instruction, the verdict in favor of appellee on his counterclaim constituted an implicit finding by the jury that the accident was not unavoidable. Accordingly, I would hold that any error in giving the instruction was harmless.

I join in the remainder of the majority opinion.

DUNN, Retired Justice (concurring in part, dissenting in part).

I would concur in the majority opinion in reversing and remanding on the issue of the unavoidable accident instruction being given to the jury under this state of facts. I would also concur in the majority opinion's handling of voir dire.

However, I would hold that the trial court erred in not directing a verdict as Royer was guilty of negligence as a matter of law.

Under the facts most favorable to Royer, before making this turn, he activated his signal lights for a left turn and looked in the rear view mirror. He saw nothing but his brother's truck immediately behind him. This does not satisfy his duty under SDCL 32–26–22. *Barnhart v. Ahlers,* 79 S.D. 186, 189, 110 N.W.2d 125, 127 (1961), places the duty on the driver, in making this dangerous turn, to use due care "before ... and *while turning."* (Emphasis added.) Here, it did no good for Royer to look in his rear view mirror before making his turn as all he could see was his brother's truck in close proximity behind him. He owed a duty to look and look *effectively,* and that could only be done after he started his turn and his view was unobstructed by his brother's truck as to the highway behind him. This he did not do.

By his own admission, he made this turn without first seeing that it could be done in safety and he was guilty of negligence as a matter of law.

Further, this deer hunting safari travelling down the highway in tandem was in violation of SDCL 32–26–44, as they did not leave sufficient space between the trucks to enable another to enter and occupy such space in safety. This violation was a proximate cause of this accident as (1) Royer admittedly could not see the Hoffman vehicle approaching in his rear view mirror because his brother's truck was immediately behind him, and (2) it did not leave space for Hoffman to maneuver into the right-hand lane when the Royer truck pulled out in front of him.