STATE OF MINNESOTA

IN SUPREME COURT

A23-1464

Court of Appeals                                                        Thissen, J.
                                                        Took no part, Hennesy, J.

Alvin Glay,
trustee for the next of kin of
Unity McGill,

                    Respondent/Cross-Appellant,

vs.                                                        Filed: January 28, 2026
                                                        Office of Appellate Courts
R.C. of St. Cloud, Inc.,

                    Appellant/Cross-Respondent.

_____

Jacob F. Siegel, Robert J. King, Jr., Kara K. Rahimi, Ciresi Conlin LLP, Minneapolis, Minnesota, for respondent/cross-appellant.

Gregory A. Zinn, Gregory A. Zinn, PLC, Minneapolis, Minnesota, for appellant/cross-respondent.

Michael A. Bryant, Tucker L. Isaacson, Bradshaw & Bryant, PLLC, Waite Park, Minnesota, for amicus curiae Minnesota Association for Justice.

Steven E. Tomsche, Richard C. Scattergood, Samantha P. Flipp, Tomsche, Sonnesyn & Tomsche, PA, Minneapolis, Minnesota, for amicus curiae Minnesota Defense Lawyers Association.

_____

1

1.      Respondent/cross-appellant, who is challenging the jury instructions on appeal, did not invite error in the district court's jury instructions.

2.      To avoid confusing and misleading the jury in an innkeeper negligence case, a jury should not be instructed on superseding intervening cause when the conduct that an innkeeper claims is a superseding intervening cause is the same conduct that must be foreseeable to the innkeeper to establish the innkeeper's negligence.

3.      Because the jury instructions were likely to confuse and mislead the jury and the resulting error was prejudicial under the circumstances of this case, a new trial is required.

Affirmed.

## O P I N I O N

THISSEN, Justice.

This case stems from the murder of Unity McGill at The Red Carpet Nightclub (Red Carpet) in St. Cloud, owned and operated by appellant/cross-respondent R.C. of St. Cloud, Inc. (R.C.).  The three assailants who murdered McGill were convicted and sentenced for their roles in his death.  Respondent/cross-appellant Alvin Glay is McGill's brother.  The district court appointed Glay to serve as trustee for McGill's next of kin.  Our decision concerns a civil wrongful death action that Glay brought against R.C. and McGill's murderers.  As relevant here, Glay argued that R.C. is liable for McGill's death under an innkeeper negligence theory.  A jury found that R.C. acted negligently in failing to prevent

2

McGill's death, but also found that R.C.'s negligence was not the direct cause of McGill's death. Accordingly, the jury found that R.C. was not liable for McGill's death.

Glay moved for a new trial. The district court denied the motion. The court of appeals reversed the district court's decision and ordered a new trial as to R.C.'s liability and related damages. We granted R.C.'s petition for review.[1]

We are asked to decide whether the district court improperly instructed the jury on superseding intervening cause, confusing the jury and causing prejudice. We hold that Glay did not invite jury instruction error and that Glay is entitled to a new trial on R.C.'s liability because the superseding intervening cause instruction in this case was confusing and may have prejudiced the outcome. We affirm the decision of the court of appeals.

**FACTS**

***Murder of Unity McGill***

On December 29, 2019, Bryant Stephenson, Christopher Johnson, and Lawrence Johnson[2] murdered Unity McGill on the dance floor of the Red Carpet. Approximately 20 minutes before the murder—around 1:03 a.m.—the three assailants assaulted an unidentified male on the dance floor. McGill was nearby when that assault occurred and

---

[1] We also granted Glay's cross-petition for review requesting that we address whether the district court improperly instructed the jury to apportion liability (or "compare fault") between an alleged negligent tortfeasor and the intentional tortfeasors. Based on our disposition of this case—a remand to the district court for a new trial—we refrain from reaching the question in the request for conditional cross-review. The court of appeals did not address this question in its opinion.

[2] We refer McGill's murderers collectively as the "three assailants."

3

tried to help break it up.  Following the assault, R.C. staff removed the three assailants and the unidentified male from the premises, but did not remove McGill.

R.C.'s policy was to remove anyone involved in a fight on the premises.  By policy, security staff were supposed to text one another and communicate with the staff at the doors regarding anyone who had been kicked out.  Despite these protocols, R.C. staff testified that no text message went out regarding the removal of the three assailants and there was no evidence that staff at the front door were informed of the removal.  All three assailants were allowed to reenter the Red Carpet by 1:23 a.m.  There is evidence that the three assailants changed clothes prior to reentering.  Security at the front door did not use a metal detecting wand on the three men when they reentered.

The assailants quickly made their way back to the dance floor.  One member of the security staff who had removed the three assailants saw that they had returned.  The staff member tried to gather other bouncers to help him deal with the situation.  While the staff member was attempting to arrange additional security, the three assailants located McGill on the dance floor and attacked him.  Security came to break up the attack but arrived too late; the three assailants had stabbed McGill multiple times,[3] and he later died from his injuries.  All three assailants were convicted of and sentenced for second-degree murder.

---

[3]  The parties dispute whether any of the men brought the murder weapon with him upon reentering the Red Carpet or if someone already inside provided the weapon. Whether the weapon was already inside the Red Carpet is important to R.C.'s theory that it is not liable for McGill's murder because, even had staff "wanded" the three assailants for weapons upon their return, it would not have prevented McGill's murder.  But how the three assailants obtained the murder weapon is irrelevant under Glay's alternate theory of R.C.'s liability—that R.C. was negligent in allowing the three assailants to reenter at all.

4

*Civil Trial*

Glay brought a wrongful death negligence action against R.C. on behalf of McGill's next of kin, claiming that R.C. failed to use reasonable care to guard against the attack on McGill. The case was tried under an innkeeper liability theory of negligence, which applies when a bar owner owes its patrons a duty to maintain safety and order for their protection.[4] *See Boone v. Martinez*, 567 N.W.2d 508, 510 (Minn. 1997). Under this theory, an innkeeper is negligent for failing to prevent harm to a bar patron by another patron if (1) the innkeeper was put on notice by some act or threat of the vicious or dangerous propensities of a bar patron, (2) the innkeeper had an adequate opportunity to protect the injured patron from being harmed by the bar patron with vicious or dangerous propensities, (3) the innkeeper failed to take reasonable steps to protect the patron, and (4) the injury to a bar patron was foreseeable. *Id.*

After Glay filed suit, R.C. filed a third-party complaint against the three assailants. R.C. claimed that, should it be found liable, R.C. would be entitled to indemnification and/or contribution from the three assailants for the full amount of any damages imposed. Glay amended his complaint to join the three assailants as co-defendants in his suit against R.C. Glay moved for partial summary judgment, arguing that the three assailants were liable for McGill's death; the district court granted the motion before trial.

---

[4] Bar owners, like other "innkeepers," have a duty to their patrons to exercise reasonable care to protect their patrons from injury. *Henson v. Uptown Drink, LLC*, 922 N.W.2d 185, 191 (Minn. 2019) (stating that "our precedent is clear that bar owners, as do all innkeepers, have a duty of care . . . 'to exercise reasonable care under the circumstances to protect their patrons from injury' " (quoting *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn. 1986))).

R.C. moved for summary judgment against Glay on the innkeeper negligence claim. Relevant to this appeal, one of R.C.'s arguments for summary judgment was that the undisputed facts established that the attack on McGill was not foreseeable as a matter of law and that the three assailants' criminal conduct superseded any negligence by R.C. The district court denied R.C.'s motion. It stated that, based on the facts presented on summary judgment, whether R.C. should have foreseen the three assailants' conduct was a "close call." Accordingly, the district court refused to determine foreseeability as a matter of law, leaving the question for the jury.

R.C. sent a letter requesting that the district court reconsider its earlier decision denying summary judgment, and the district court agreed to do so. R.C. once again urged the district court to determine as a matter of law that the three assailants' criminal conduct was a superseding intervening cause that broke the chain of causation between R.C.'s conduct and McGill's injury. R.C. argued that murder is never a foreseeable act and therefore is always a superseding intervening cause. Glay responded by asserting that it is not true that an intentional criminal act always supersedes an original tortfeasor's negligence as a matter of law. The district court again denied R.C.'s motion.

Around the same time, the parties submitted proposed jury instructions for trial. In his proposed instructions, Glay recommended that the district court use the standard jury

6

instruction on innkeeper negligence.[5]  The standard jury instruction did not direct the jury to determine whether the plaintiff's injury was foreseeable, relying upon prior authority that " '[t]he foreseeability issue, as a threshold issue, is more properly decided by the court prior to submitting the case to the jury.' "[6]  4A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 85.70 (6th ed. 2014) (quoting *Alholm v. Wilt*, 394 N.W.2d 488, 491 n.5 (Minn. 1986)).  In addition to the three standard elements in the innkeeper negligence jury instruction, however, the district court instructed the jury to assess whether McGill's injury was foreseeable.  It further explained to the jury: "An injury is foreseeable if a reasonable person in the same or similar circumstances would

---

[5]  The standard jury instruction, CIVJIG 85.70, states:

(*Proprietor*) was negligent if:

1.  (*Proprietor*) was put on notice of the offending person's vicious or dangerous potential by some act or threat, and
2.  (*Proprietor*) had an adequate opportunity to protect the injured person, and
3.  (*Proprietor*) failed to take reasonable steps to protect the injured person.

4A Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 85.70 (6th ed. 2014).

[6]  Although foreseeability is required to establish an innkeeper's duty, we have recognized that foreseeability is often an issue properly decided by the court as a matter of law before submitting a case to a jury.  *Alholm*, 394 N.W.2d at 491 n.5.  Under certain circumstances discussed in more detail below, the question of foreseeability may be submitted to the jury.  *See Montemayor v. Sebright Prods., Inc.*, 898 N.W.2d 623, 629 (Minn. 2017); *Domagala v. Rolland*, 805 N.W.2d 14, 27 (Minn. 2011).

7

have foreseen it. The exact way an injury occurred does not have to be foreseeable."[7] The

district court's jury instructions on innkeeper negligence were as follows:

> [R.C.] is required to use reasonable care in operating their business.
>
> "Reasonable care" is the care that a reasonable person would use in similar circumstances. The failure to use reasonable care is negligence.
>
> "Negligence" is doing something that a reasonable person would not do, or failing to do something a reasonable person would do, in similar circumstances.
>
> An injury is foreseeable if a reasonable person in the same or similar circumstances would have foreseen it. The exact way an injury occurred does not have to be foreseeable.
>
> [R.C.] was negligent if:
>
> [R.C.] was put on notice of the offending person's vicious or dangerous potential by some act or threat, and
>
> [R.C.] had an adequate opportunity to protect the injured person, and
>
> [R.C.] failed to take reasonable steps to protect the injured person[,] and
>
> The injury was foreseeable.[8]

After the district court reconsidered and again denied R.C.'s summary judgment

motion, R.C. supplemented its proposed jury instructions with a request for an instruction

on superseding intervening cause. R.C. asked the district court to instruct the jury on

---

[7]     The district court's instruction directly quoted the standard jury instruction on foreseeability. *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 25.10 (6th ed. 2014).

[8]     This quotation is taken from and follows the formatting of the written jury instructions the district court filed, except that the written jury instructions included headings and numbers that the district court did not read to the jury; we have removed these to reflect the instructions given.

8

superseding intervening cause using language from our prior opinions, rather than using the standard superseding intervening cause instruction in CIVJIG 27.20.[9] Glay opposed any instruction on superseding intervening cause. According to Glay, such an instruction would be inappropriate because the district court had already ruled that it would send the issue of "foreseeability" to the jury under the innkeeper's duty instruction. Glay observed that the three assailants' conduct could not have been a superseding intervening cause if R.C. could have reasonably anticipated their attack on McGill. Glay argued that, if the jury determined that McGill's murder was "foreseeable" for purposes of determining R.C.'s negligence under an innkeeper's liability theory, then it would necessarily mean that R.C. could have "reasonably anticipated" the murder. In that circumstance, the three assailants' conduct could not have been a superseding intervening cause as a matter of law. Before the jury was instructed at trial, Glay reiterated several times that he opposed any superseding intervening cause instruction for that reason. In the alternative, Glay argued

---

[9] The standard superseding intervening cause instruction, CIVJIG 27.20, states:

However, a cause is not a direct cause when there is a superseding cause.

A cause is a superseding cause when four conditions are present:

1. It happened after the original *(negligence)(fault)*; and
2. It did not happen because of the original *(negligence)(fault)*; and
3. It changed the natural course of events by making the result different from what it would have been; and
4. The original wrongdoer could not have reasonably anticipated this event.

4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 27.20 (6th ed. 2014).

that, if the district court instructed the jury on superseding intervening cause, it should use CIVJIG 27.20 rather than R.C.'s proposed instruction based on case law.

The district court ultimately decided to instruct the jury on direct and superseding intervening cause using the standard civil jury instructions for each:

> A direct cause is a cause that had a substantial part in bringing about the event. However, a cause is not a direct cause when there is a superseding cause. A cause is a superseding cause when four conditions are met—I'm sorry—are present: First, it happened after the original negligence; and it did not happen because of the original negligence; and it changed the natural course of events by making the result different from what it would have been, and the original wrongdoer could not have reasonably anticipated this event.

*See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 27.10, 27.20 (6th ed. 2014).[10]

At trial, before jury deliberations, the parties discussed the district court's proposed special verdict form and its relationship to the jury instructions on causation. Among other things, the parties debated whether the structure of the causation questions on the special verdict form, when read in light of the jury instructions on direct cause and superseding intervening cause, could confuse the jury and potentially lead to a perverse verdict. In

---

[10]    This quotation reflects the instructions the district court gave to the jury in the courtroom. The written jury instructions the district court filed included several headings and numeration that the district court did not read to the jury. Further, we note that although the Jury Instruction Guides use the phrase "reasonably anticipated" in describing the fourth element of superseding cause, 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 27.20 (6th ed. 2014), we have said that the alleged superseding cause "must not have been *reasonably foreseeable* by the original wrongdoer." *Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997) (emphasis added) (citing *Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 115 (Minn. 1992) (internal quotation marks omitted)). *See also Wartnick*, 490 N.W.2d at 115 ("The fourth element necessary to establish the presence of a superseding cause is the foreseeability of the intervening act.").

particular, the district court expressed concern that the first sentence of the superseding intervening cause instruction immediately followed the direct cause instruction and stated: "However, a cause is not a direct cause when there is a superseding cause." In his objection to including a superseding intervening cause question on the special verdict form, Glay argued:

> [T]he innkeeper's duty incorporates all the elements of superseding cause; and, therefore, in order for the jury to answer "yes" to the question on [R.C.'s] negligence, [foreseeability is] part of the analysis of getting to "yes," so it's not necessary to have the separate duplicative and confusing question on the special verdict.

The district court ultimately left the superseding intervening cause question on the special verdict form to allow R.C. "to argue their theory of the case."

During deliberations, the jury sought clarification on the foreseeability portion of the innkeeper negligence instruction, asking the district court, "Are we considering the particular injury to Unity McGill or any injury to any patron?" The district court instructed the jury to rely on the instructions as they were given.

The jury returned a verdict finding that R.C. was negligent in McGill's death.[11] On the special verdict form, however, the jury found that R.C.'s negligence was not a direct cause of McGill's death; it did not answer the question on superseding intervening cause. The relevant portions of the special verdict form read as follows:

3. Was [R.C.] negligent in failing to take reasonable steps to protect Unity McGill from the intentional acts of Bryant Jerome Stephenson,

---

[11] Questions 1 and 2 of the special verdict form asked whether the three assailants intentionally harmed McGill and whether their intentional acts were a direct cause of McGill's death. Because the district court found the three assailants liable as a matter of law before trial, these questions were already checked "yes" on the form the jury received.

11

Christopher Lamar Johnson, and Lawrence Michael Johnson on December 29, 2019?

ANSWER: Yes _X_    No _____

***Only if your answer to Question 3 is "Yes," then answer this question:***

4.    Was [R.C.]'s negligence a direct cause of Unity McGill's death on December 29, 2019?

**ANSWER:** Yes _____    No _X____

***Only if your answer to Question 4 is "Yes," then answer this question:***

5.    Was the conduct of Bryant Jerome Stephenson, Christopher Lamar Johnson, and Lawrence Michael Johnson a superseding cause of the death of Unity McGill on December 29, 2019?

ANSWER: Yes _____    No _____ [Left unanswered]

The jury awarded no damages from either R.C. or the three assailants.

Glay moved for a new trial under Minnesota Rule of Civil Procedure 59.01. He argued that it was an error of law for the district court to instruct the jury on superseding intervening cause because the innkeeper's duty instruction asked the jury to determine whether McGill's murder was foreseeable.[12] *See* Minn. R. Civ. P. 59.01(f). Glay once again asserted that conduct cannot be a superseding intervening cause if the injury resulting from the conduct is foreseeable. Accordingly, argued Glay, once the jury determined that

---

[12]    Glay also argued that the jury's failure to award any damages given the three assailants' liability was contrary to the evidence and appeared to have been determined under the influence of passion or prejudice. *See* Minn. R. Civ. P. 59.01(e). The district court granted Glay's motion for a new trial, but only as to the amount of monetary damages Glay should be awarded from the three assailants.

12

McGill's murder was foreseeable, it could not also determine that the three assailants' intentional criminal conduct was a superseding intervening cause. The district court denied Glay's motion with regard to the verdict in favor of R.C., including his assertion that it was legal error to instruct the jury on superseding intervening cause.

On appeal, Glay argued that the district court abused its discretion in instructing the jury on superseding intervening cause. A divided panel of the court of appeals agreed with Glay, determining that the instruction created confusion and prejudiced Glay. *Glay ex rel. McGill v. R.C. of St. Cloud, Inc.*, No. A23-1464, 2024 WL 2266939, at *5 (Minn. App. May 20, 2024). The majority ordered a new trial as to R.C.'s liability and related damages. *Id.* at *6. The dissent would have affirmed and held that the district court did not err in denying a new trial. *Id.* at *11–12 (Slieter, J., dissenting).

**ANALYSIS**

Glay argues that he should be granted a new trial because the district court confused the jury by instructing it to twice consider whether R.C. could have foreseen that the three assailants would stab McGill—in the instruction on innkeeper negligence as well as in the instruction on superseding intervening cause. We review the denial of a motion for a new trial based on erroneous jury instructions for an abuse of discretion. *Vermillion State Bank v. Tennis Sanitation, LLC*, 969 N.W.2d 610, 619 (Minn. 2022).

To address this question, we first consider whether Glay invited any error in the jury instructions. We conclude that Glay did not invite error. Next, we assess whether the district court abused its discretion when it instructed the jury because the instructions were confusing or misleading. We conclude that the district court did abuse its discretion.

13

Finally, we address whether the confusing jury instructions prejudiced Glay. We conclude that the error in this case was prejudicial and thus Glay is entitled to a new trial.

## I.

Before we reach the substantive question before us, we address R.C.'s argument that Glay invited error in the jury instructions. The court of appeals determined that there was no invited error because Glay objected to the superseding intervening cause instruction. *Glay*, 2024 WL 2266939, at *5. The dissent disagreed. *Id.* at *10 (Slieter, J., dissenting) (explaining the position that Glay invited jury instruction error).

R.C.'s invited-error argument turns on two assertions. First, R.C. argues that Glay agreed with the district court's decision to add the foreseeability component to the innkeeper's duty instruction. R.C. further notes Glay asked that, if the district court decided to instruct on superseding intervening cause (something that Glay opposed), it should use the language of the standard jury instruction instead of the superseding intervening cause instruction based on case law that R.C. had proposed.

The doctrine of invited error "precludes a party from asserting error on appeal which he invited or could have prevented in the court below." *Krenik v. Westerman*, 275 N.W. 849, 852 (Minn. 1937). As we discussed in *State v. Trifiletti*:

> We have recognized that the doctrine of invited error prevents a party from challenging on appeal a district court decision to which the party consented or affirmatively requested. *See State v. Weigold*,[] 160 N.W.2d 577, 579–80 (Minn. 1968) (holding that a defendant who affirmatively consented on the record to closing a public trial by stating "I have no objection to this" could not challenge the closure on appeal); *Majerus v. Guelsow*,[] 113 N.W.2d 450, 457 (Minn. 1962) (citing that the "settled general rule is that a party cannot avail himself of invited error" and holding that a party who successfully persuaded the district court to change the answers to three jury interrogatories

14

because the answers were contrary to the evidence could not on appeal challenge that decision as improper because the party was estopped from making the argument (quoting *McAlpine* [*v. Fid. & Cas. Co. of N.Y.*], 158 N.W. [967,] 970 [(Minn. 1916)])).

We have also in some cases (although not all) referred to a party's passive failure to take action to prevent a district court's erroneous action—like failing to object—as a species of invited error. *See, e.g.*, *State v. Goelz*, 743 N.W.2d 249, 258 (Minn. 2007) (stating that "[t]he invited error doctrine prevents a party from asserting an error on appeal that he invited or could have prevented in the court below" (emphasis added)); *see also State v. Carridine*, 812 N.W.2d 130, 142 (Minn. 2012) (stating that "[u]nder the invited error doctrine, a party cannot assert on appeal an error that he invited or that could have been prevented at the district court").

6 N.W.3d 79, 94 & n.11 (Minn. 2024) (final two alterations in original).[13]

We conclude that Glay did not invite the error about which he complains. In opposing R.C.'s motion that the district court should find the three assailants' conduct a superseding intervening cause as a matter of law, Glay argued that the facts of whether the attack on McGill was foreseeable were disputed and, consequently, summary judgment that the attack was unforeseeable as a matter of law was improper. The district court agreed with Glay and denied the motion for summary judgment.

Thereafter, R.C. requested reconsideration of the district court's summary judgment denial. While that request was pending, Glay submitted proposed jury instructions on innkeeper negligence. Those proposed instructions did not ask the jury to determine

---

[13]     In *Trifiletti*, we did not resolve whether passive action constitutes invited error because "Trifiletti did not act passively in this case, but instead plainly objected to the district court's decision to allow [a witness] to testify without requiring that she be physically present and in person in the courtroom." 6 N.W.3d at 94 n.11. Here, we decline to reach the question for the same reason—Glay consistently argued that the jury should not be instructed on superseding cause, as we explain below.

15

foreseeability. The district court ultimately denied the reconsideration request and decided to instruct the jury to determine whether "the injury was foreseeable."

After its reconsideration request was denied, R.C. urged the district court to instruct the jury on superseding intervening cause. Rather than using the traditional civil jury instruction on superseding intervening cause, R.C. proposed the following jury instruction based on case law:

> A superseding cause is "an act in no way caused by the defendant's negligence, occurring after defendant's negligent act or omission and operating as an independent force to produce the injury." As a general rule, a willful, malicious, or criminal act breaks the chain of causation and is a superseding cause.

(Citations omitted.)[14] In response, Glay repeatedly and consistently made *two* arguments. First, and primarily, he argued that because the district court planned to tell the jury in the innkeeper negligence instruction that it was required to determine whether McGill's injury was foreseeable, the district court should not instruct the jury on superseding intervening cause. In the alternative, Glay took that position that, if the district court did instruct the jury on superseding intervening cause, it should use the standard jury instruction on superseding intervening cause—CIVJIG 27.20—rather than the instruction R.C. proposed.

Glay argues that the jury instruction confusion in this case resulted from instructing the jury on foreseeability twice. Glay never agreed that the district court should so instruct the jury. Rather, he resisted R.C.'s summary judgment argument that the undisputed facts

---

[14] As explained in Part II, the proposed jury instruction is an incomplete and incorrect statement of the law. Glay did not invite the error about which he complains by opposing the proposed jury instruction in the event the district court decided to give a superseding intervening cause instruction.

16

established that R.C. could not have foreseen that McGill would be injured if three assailants returned to the Red Carpet. Further, Glay consistently maintained that, if the district court referred to foreseeability in the innkeeper negligence instruction, the district court should not include an instruction on superseding intervening cause. Under these circumstances, Glay did not invite the error alleged here. *Cf. Trifiletti*, 6 N.W.3d at 94–95 (holding that the defendant did not invite error when, after initially—but unsuccessfully—objecting to the district court's decision that a witness was unavailable for Confrontation Clause purposes, the defendant agreed to have sworn transcript testimony read into the record rather than having the witness appear via two-way video).

## II.

We now turn to the substantive issue before us. This case comes to us from the district court's denial of Glay's Rule 59.01(f) motion for a new trial on the ground that the jury instructions were erroneous. "We review a district court's decision to grant or deny a new trial for an abuse of discretion." *Christie v. Est. of Christie*, 911 N.W.2d 833, 838 (Minn. 2018); *see* Minn. R. Civ. P. 59.01(f) (stating that "[a] new trial may be granted . . . for any of the following causes: . . . (f) [e]rrors of law occurring at the trial, and objected to at the time or, if no objection need have been made pursuant to Rules 46 and 51, plainly assigned in the notice of motion").

Glay claims that the district court's jury instructions were prejudicially confusing. A district court has broad discretion to fashion jury instructions and we will not disturb a district court's decision regarding jury instructions absent an abuse of discretion. *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002). Giving an erroneous jury

17

instruction—one that, "when read as a whole, . . . materially misstates the law . . . or is apt to confuse and mislead the jury"—is an abuse of discretion. *Domagala v. Rolland*, 805 N.W.2d 14, 29 (Minn. 2011) (citations omitted) (internal quotation marks omitted).

The dispute here centers on the district court's decision to instruct the jury on both innkeeper negligence and the superseding intervening cause defense. Regarding innkeeper negligence, the district court instructed the jury:

> [R.C.] was negligent if [R.C.] was put on notice of the offending person's vicious or dangerous potential by some act or threat and [R.C.] had an adequate opportunity to protect the injured person, and [R.C.] failed to take reasonable steps to protect the injured person, and *the injury was foreseeable*.

(Emphasis added.) The district court further instructed the jury that "[a]n injury is foreseeable if a reasonable person in the same or similar circumstances would have foreseen it. The exact way an injury occurred does not have to be foreseeable." *See* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 25.10 (6th ed. 2014). As discussed above, the jury found that R.C. was negligent in failing to take reasonable steps to protect McGill from the attack by the three assailants.

The district court also instructed the jury on causation, following CIVJIGs 27.10 and 27.20:

> A direct cause is a cause that had a substantial part in bringing about the event. However, a cause is not a direct cause when there is a superseding cause. A cause is a superseding cause when four conditions are met—I'm sorry—are present: First, it happened after the original negligence; and it did not happen because of the original negligence; and it changed the natural course of events by making the result different from what it would have been, and *the original wrongdoer could not have reasonably anticipated this event*.

18

(Emphasis added.) The jury found that R.C.'s negligence was not a direct cause of McGill's death.

In short, the district court instructed the jury that it could not find R.C. liable under a theory of innkeeper negligence if R.C. could not have foreseen the injury to McGill. Then, in the instruction explaining causation, the district court told the jury that it could not find R.C. liable if (among other things) R.C. could not have reasonably anticipated that the three assailants would stab McGill. The question we must answer is whether these instructions were apt to confuse and mislead the jury.

## A.

We begin with some general background on Minnesota law on innkeeper negligence and superseding intervening cause.

Innkeeper negligence is a specific form of negligence. Ordinary negligence principles require a plaintiff to prove (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of duty was a proximate cause of the injury. *See Domagala*, 805 N.W.2d at 22. Generally, a person has no duty to protect another from harm caused by a third person. *Delgado v. Lohmar*, 289 N.W.2d 479, 483 (Minn. 1979).

An innkeeper's duty is different. Under the innkeeper negligence theory, an innkeeper owes a duty to protect its patrons from injuries inflicted by other patrons—and may be held liable for such injuries—when four conditions are met: (1) the innkeeper is put on notice by some act or threat of vicious or dangerous propensities of one of its patrons, (2) the proprietor has an adequate opportunity to protect the patron from injury by

19

the first patron but (3) the innkeeper fails to take reasonable steps to do so, and (4) injury to the patron is foreseeable. *Boone*, 567 N.W.2d at 510.

An injury is foreseeable if, in considering the defendant's conduct, "it was objectively reasonable to expect the specific danger causing the plaintiff's injury." *Domagala*, 805 N.W.2d at 27. "The test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of [the harmful event] was clear to the person of ordinary prudence.' " *Id.* (quoting *Connolly v. Nicollet Hotel*, 95 N.W.2d 657, 664 (Minn. 1959) (concluding that a hotel serving intoxicating beverages owed a duty to protect a person walking on a public sidewalk adjacent to the hotel from the consequences of dangerous conduct by the hotel's guests, who released objects from hotel windows)). Further, the focus of the inquiry is on whether it was reasonably foreseeable that a patron, including the injured patron, would be injured by an attack. *See Ponticas v. K.M.S. Invs.*, 331 N.W.2d 907, 912 (Minn. 1983) (stating that it was "clear the tenants of an apartment complex, including [the injured tenant], were foreseeable plaintiffs").

In this case, the harmful event that resulted in injury was the three assailants' attack on McGill. Accordingly, to assess whether R.C. was negligent under an innkeeper negligence theory, either the district court or the jury[15] had to determine, among other

---

[15] Under our case law, we consider whether an injury is foreseeable to be a question of law "more properly decided by the court prior to submitting the case to the jury." *Alholm*, 394 N.W.2d at 491 n.5. This is because foreseeability provides insight into whether "the connection between the danger and the alleged negligent act 'is too remote to impose liability as a matter of public policy,' " in which case there is no duty. *Montemayor*,

20

things, whether a person of ordinary prudence would conclude that it was possible that the three assailants would attack a patron after being allowed to reenter the Red Carpet (or being allowed to do so without first being subjected to a metal detection wand). We focus on whether R.C. could have reasonably foreseen the possibility that the three assailants would attack a patron, rather than whether R.C. could have reasonably foreseen the possibility that the three assailants would attack a patron with a sharp object, because "[t]he test is not whether the precise nature and manner of the plaintiff's injury was foreseeable, but whether 'the possibility of [the harmful event] was clear to the person of ordinary prudence.' " *Domagala*, 805 N.W.2d at 27 (citing *Connolly*, 95 N.W.2d at 664).

Under innkeeper negligence, when an innkeeper is on notice, by some act or threat, of one of its patrons' vicious or dangerous propensities and has an adequate opportunity to protect another patron from injury by the first patron, the innkeeper must take reasonable steps to prevent the first patron from causing foreseeable harm to the second patron. A negligent act is the cause of a harm if the act was a substantial factor in the harm's

---

898 N.W.2d at 629 (quoting *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 924 (Minn. 1986)); *see also Doe 169 v. Brandon*, 845 N.W.2d 174, 179 (Minn. 2014) (stating that an injury was not foreseeable as a matter of law where "undisputed facts, considered together," established that the connection between the defendant's conduct and the plaintiff's injury was too attenuated). Where "reasonable persons might differ as to whether" an injury was foreseeable, we have affirmed district court decisions to submit the question of foreseeability to the jury. *Montemayor*, 898 N.W.2d at 630 (citation omitted) (internal quotation marks omitted); *see also Domagala*, 805 N.W.2d at 27 (stating that "[i]n close cases, the issue of foreseeability should be submitted to the jury").

In this case, the district court determined that, because there was conflicting evidence on whether R.C. should have foreseen that the three assailants would attack McGill, reasonable persons might reach different answers to that question. Accordingly, the district court left that question for the jury. Before us, no one challenges the decision to submit the question of foreseeability to the jury.

occurrence.  *George v. Est. of Baker*, 724 N.W.2d 1, 10 (Minn. 2006).  The innkeeper's negligence is a substantial factor when the harm could have been prevented had the innkeeper taken reasonable steps.

R.C. argues that the three assailants' attack on McGill was a superseding intervening cause that broke the chain of causation between R.C.'s negligence and McGill's injury. Generally, an intervening cause does not relieve a defendant of liability for the consequences of its negligence if the intervening cause was a "foreseeable consequence" of the original act.  *Rieger v. Zackoski*, 321 N.W.2d 16, 21 (Minn. 1982).  For an intervening cause to become a *superseding* intervening cause, thereby breaking the chain of causation from the original negligent act and the injury, it must satisfy four elements:

> (1) Its harmful effects must have occurred after the original negligence; (2) it must not have been brought about by the original negligence; (3) it must actively work to bring about a result which would not otherwise have followed from the original negligence; and (4) it must not have been *reasonably foreseeable* by the original wrongdoer.

*Wartnick v. Moss & Barnett*, 490 N.W.2d 108, 113 (Minn. 1992) (emphasis added) (quoting *Rieger*, 321 N.W.2d at 21) (internal quotation marks omitted).  *See also* 4 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides*, *Civil*, CIVJIG 27.20 (6th ed. 2014) (stating that an intervening event is not a superseding intervening cause unless "the original wrongdoer could not have reasonably anticipated this event").  Thus, an intervening cause—here, the three assailants' attack on McGill—cannot be considered a *superseding* intervening cause if the defendant—in this case, R.C.—could have reasonably foreseen that intervening cause.  *Rieger*, 321 N.W.2d at 21.

22

In its brief to this court, as it did before the district court, R.C. relies on *Anderson v. Theisen*, 43 N.W.2d 272 (Minn. 1950), to suggest that an innkeeper can never be held liable if the intervening act of the third person is, as here, an intentional criminal act. We disagree. In *Wallinga v. Johnson*, 131 N.W.2d 216, 219–20 (Minn. 1964), we addressed a lawsuit a hotel guest brought against the hotel over the theft of rings the guest had entrusted to the hotel for safekeeping. In rejecting the hotel's argument that the theft was a criminal act that broke the chain of causation as a matter of law, we explained:

> As a general rule, a criminal act breaks the chain of causation and insulates the primary actor from liability. A criminal intervening force, however, cannot be a legally effective superseding cause *unless it possesses the attribute of unforeseeability*. The original actor cannot claim immunity from liability for loss when the possibility that third persons will act in a certain manner is one of the hazards he should guard against. The primary purpose of depositing the rings for safekeeping was to guard against theft; defendants must have, or at least should have, foreseen the possibility of their loss in the manner in which they were taken. We therefore hold that the robbery could not as a matter of law be a superseding cause.

*Id.* (footnotes omitted) (emphasis added).[16] Similarly, in this case, R.C.'s duty was to protect its patrons from injuries inflicted by other patrons—including criminal acts—if it was put on notice by some act or threat of one of its patrons' vicious or dangerous propensities, it had an adequate opportunity to protect other patrons from injury by the first patron but failed to take reasonable steps to do so, and injury to another patron was foreseeable. As shown by its verdict finding R.C. negligent, the jury determined that R.C. was on notice that the three assailants had dangerous propensities, had an opportunity to

---

[16] In *Wallinga*, we concluded that, because there was no reasonable difference of opinion that the theft of the ring was foreseeable, foreseeability was a legal issue for the court to decide rather than the jury. 131 N.W.2d at 220.

protect other patrons from the three assailants and did not take reasonable steps to do so, and that the three assailants' attack resulting in injury to a patron was foreseeable.

What is important is that, in this case, the harmful event or conduct which must have been foreseeable to establish innkeeper negligence and the conduct that R.C. claims is a superseding intervening cause are the same: the three assailants' attack on another patron. This may not always be the case.

B.

Against this backdrop, we conclude that the instructions on innkeeper negligence and superseding intervening cause were apt to confuse or mislead the jury by instructing it to make the very same determination twice. The jury was first asked to determine (among other things) whether a person of ordinary prudence would conclude that it was possible that the three assailants would attack a patron after being allowed to reenter the R.C. and to do so without being wanded for weapons. In its instructions as to whether R.C. was negligent, the district court told the jury that an injury to a patron following R.C.'s conduct allowing the three assailants to reenter the Red Carpet and failing to wand them "is foreseeable if a reasonable person in the same or similar circumstances would have foreseen it. The exact way an injury occurred does not have to be foreseeable."

This is the same determination that the jury was instructed to make in assessing whether the three assailants' attack was a superseding intervening cause: whether R.C. as "the original wrongdoer could not have reasonably anticipated this event." Asking the jury to answer the same question twice created a meaningful risk that the jury understood the two inquiries to be different when, under the law, they are the same.

24

In cases like this, a jury should not be instructed on superseding intervening cause when the conduct that the innkeeper claims was a superseding intervening cause is the same conduct that must have been foreseeable to an innkeeper to establish the innkeeper's negligence. On the one hand, if a jury determines that the evidence fails to establish any one of the elements of innkeeper negligence—including foreseeability—then the jury must find the innkeeper was not negligent. In that situation, an instruction on superseding intervening cause is unnecessary because the jury will never reach the question of causation. On the other hand, in cases where the jury finds a defendant innkeeper negligent, it necessarily means the jury concluded that the patron's injurious conduct foreseeable. In that situation, the innkeeper cannot establish that the patron's conduct giving rise to the innkeeper's negligence was also a superseding intervening cause because, as a matter of law, foreseeable conduct cannot be a superseding intervening cause.[17]

---

[17] The court of appeals expressed a different concern regarding the phrasing of the direct cause instruction. It pointed to *Orwick v. Belshan*, 231 N.W.2d 90, 97–98 (Minn. 1975), a case in which we primarily addressed whether the plaintiff demonstrated the defendant's negligence proximately caused his injuries. *Id.* at 94. In *Orwick*, the jury's answers to questions about proximate cause on the special verdict form were inconsistent. *Id.* We reversed and remanded to the district court to change one of the answers because the evidence demonstrated as a matter of law that the defendant's act was the proximate cause of the plaintiff's injuries. *Id.* at 94–95. After deciding the case on that ground, we addressed other issues because they "merit[ed] comment." *Id.* at 95. Among other things, we assessed whether the jury instruction on proximate cause was confusing. *Id.* at 97–98. The district court had formulated its own instruction on proximate cause based on the language of prior cases. *Id.* at 97. We stated that, although the instruction was technically correct, combining multiple definitions of proximate cause, some of which defined proximate cause "in terms of negativing superseding causes, . . . may be unnecessarily abstruse and confusing." *Id.* at 98. We were particularly concerned that superseding cause was not an issue in the case and that the conflicting answers on the special verdict form indicated juror confusion. *Id.* Some parallels exist between *Orwick* and this case.

25

We find support for this conclusion in *Crohn v. Dupre*, 190 N.W.2d 678 (Minn. 1971). In *Crohn*, a child threw a piece of lime cement at another child playing on an undeveloped residential lot, striking him in the eye. *Id.* at 679. The child who was struck sued the lot's owner, alleging that the owner did not exercise reasonable care to protect the child trespassers from harm caused by artificial conditions on the land. *Id.*; *see* Restatement (Second) of Torts § 339 (A.L.I. 1965).[18]

The jury in *Crohn* found that the owner was negligent but, having been instructed on superseding intervening cause, found that the owner's negligence was not the direct cause of the child's injury. 190 N.W.2d at 679. We held that the jury's finding as to direct

---

Nonetheless, based on our resolution of this case, we reach no conclusion about the proper application of *Orwick* here.

[18] Restatement (Second) of Torts § 339 states:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and
(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Restatement (Second) of Torts § 339 (A.L.I. 1965).

26

cause was "clearly inconsistent" with its negligence finding, that the instruction on superseding intervening cause was inappropriate, and subsequently remanded for a new trial on liability. *Id.* at 679–80. We explained:

> By its finding of negligence, the jury necessarily had to find that [the property owner] knew of a condition on its land from which an unreasonable danger to children was reasonably to be anticipated; that is, the jury had to find that [the property owner] had reason to anticipate the kind of occurrence which caused [the child's] injury. Conversely, an implicit jury finding that [the other child's] act constituted a superseding cause of the injury necessarily imports a finding that [the property owner] could not have reasonably anticipated that act. The court's instruction regarding superseding cause, although given without objection, was inappropriate because [the other child's] act of throwing the lime-cement . . . could not be a superseding cause. The act was reasonably foreseeable and was, in the words of [the Restatement] "the very event the likelihood of which makes the (landowner) actor's conduct negligent and so subjects the actor to liability."

*Id.* (footnote omitted).

We also find support for our conclusion in *Ponticas v. K.M.S. Investments*, 331 N.W.2d 907 (Minn. 1983). *Ponticas* arose after the manager of an apartment complex raped a tenant. *Id.* at 908–09. The tenant sued the complex's owner and operator (the landlord) for negligent hiring, alleging that the landlord failed to adequately investigate the manager's criminal record. *Id.* Like innkeeper negligence, the tort of negligent hiring renders a person liable for harmful acts committed by a third person. *Id.* at 911 (describing negligent hiring as "the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others"). The jury found the landlord liable. *Id.* at 908.

27

The landlord appealed. *Id.* After determining that employers have a duty to use reasonable care in hiring employees who may pose a threat of injury to others, *id.* at 911, we held that "it was reasonably foreseeable that a person with a history of offenses of violence could commit another violent crime" and that "tenants of an apartment complex . . . were foreseeable plaintiffs." *Id.* at 912.

In addition, we addressed the landlord's argument that the district court erred in *refusing* to instruct the jury on superseding intervening cause. We held that the district court did not err, reasoning as follows:

> The inherent nature of a negligent hiring cause of action precludes the application of superseding intervening cause. By its definition, the factfinder—the jury—has already determined the injury-causing conduct of the employee was foreseeable. Therefore, the fourth requirement [of the superseding intervening cause requirements] is not present in a negligent hiring case . . . . We conclude, therefore, there was no error in the trial court's refusal to instruct the jury on superseding intervening cause.

*Id.* at 915–16.

The same reasoning applies here. Like the defendants in *Crohn* and *Ponticas*, R.C. owed a duty to protect a certain class of persons—its patrons—from *foreseeable* harm caused by a third party. The inherent nature of an innkeeper negligence claim, then, requires a factual determination that the injury-causing conduct of the dangerous patron was foreseeable. The same injury-causing conduct by the dangerous patron cannot be a superseding intervening cause because the fourth requirement to establish innkeeper negligence—that the act not be foreseeable—is not present.

We find more support for our decision in *Wallinga*, the case arising from the theft of rings a guest entrusted to a hotel for safekeeping. As discussed earlier, we held that

28

there is no superseding intervening cause as a matter of law where a defendant has a duty to protect a person against foreseeable harm resulting from a third-party's acts and the injury that results from such acts. *Wallinga*, 131 N.W.2d at 219–20. In *Wallinga*, we concluded as a matter of law that the harm was foreseeable, *Id.* at 220, whereas in this case, the court left the question of foreseeability to the jury, but that distinction between the cases is not material. To establish that R.C. owed a duty to its patrons to protect them against attack by the three assailants, the jury was first required to find that the harm the three assailants caused was foreseeable. Once it did so (as reflected by the jury's special verdict that R.C. was negligent), then, as in *Wallinga*, there could be no superseding intervening cause when the harmful event or conduct which must have been foreseeable to establish innkeeper negligence was the same as the conduct that the defendant claimed was a superseding intervening cause.

Furthermore, the specific language in the jury instruction on superseding intervening cause exacerbated the potential for confusion in this case. We have articulated that a superseding intervening cause requires that the cause not have been "*reasonably foreseeable* by the original wrongdoer." *Canada ex rel. Landy v. McCarthy*, 567 N.W.2d 496, 507 (Minn. 1997) (emphasis added) (citing *Wartnick*, 490 N.W.2d at 113) (internal quotation marks omitted); *see Wartnick*, 490 N.W.2d at 115 (holding that a change in the statute of limitations was not foreseeable). The district court's instruction here, following CIVJIG 27.20, substituted the phrase "reasonably anticipated" for "reasonably foreseeable." Using a different term to describe the concept of foreseeability in the context of superseding intervening cause may have led the jury to understand that it could find that

29

the three assailants' attack on McGill was not foreseeable even though it had already found that R.C. could reasonably foresee that the three assailants would harm McGill.

R.C. places significant emphasis on the fact that the jury left the superseding intervening cause question on the special verdict form unanswered and determined that R.C.'s negligence did not directly cause McGill's death. But that goes to the question of whether any error was prejudicial, a separate issue that we address below in Part III. The question before us at this stage of the analysis is whether the jury instructions were erroneous. That inquiry concerns whether the instructions may have confused and misled the jury. *See Domagala*, 805 N.W.2d at 29 (stating that "[a] jury instruction is erroneous if, when read as a whole, the instruction . . . is apt to confuse and mislead the jury" (citation omitted) (internal quotation marks omitted)). *See also Lieberman v. Korsh*, 119 N.W.2d 180, 184 (Minn. 1962) (stating that "an appellate court should view the instructions as far as possible from the standpoint of the total impact or impression upon the jury. The real test is 'what *might* the jury have understood from the language of the court?' " (emphasis added) (citations omitted)). Under this standard, for the reasons discussed, we conclude that the jury instructions were erroneous.

In summary, the district court's instruction requiring that the jury assess whether the same harm to McGill was foreseeable both in determining R.C.'s negligence as an innkeeper and again in deciding whether there was a superseding intervening cause for the harm was apt to confuse and mislead the jury. Therefore, we conclude that district court abused its discretion in instructing the jury.

III.

Our determination that the jury instructions were erroneous does not end our inquiry. Even if jury instructions may have confused and misled a jury, we will not grant a new trial unless such error was prejudicial. *Rowe v. Munye*, 702 N.W.2d 729, 743 (Minn. 2005). The error is prejudicial if it would have changed the outcome of the case. *Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 885 (Minn. 1986). If we cannot determine the effect of the erroneous instruction, we give the party complaining about the instruction the benefit of the doubt and grant a new trial. *Rowe*, 702 N.W.2d at 743; *Larson v. Gannett Co., Inc.*, 940 N.W.2d 120, 140 (Minn. 2020).[19]

We now turn to whether the erroneous jury instructions changed the outcome of the case. R.C. points out that the jury never answered the superseding intervening cause question on the special verdict form; it only found that R.C.'s negligence did not *directly cause* the harm McGill suffered. Accordingly, R.C. argues, it is clear that the superseding intervening cause instruction did not affect the jury's deliberations.

We are not so sure that the jury's failure to answer the superseding intervening cause question on the special verdict form conclusively demonstrates that the jury did not consider superseding intervening cause. Immediately following its instruction that a "direct cause" is a cause that had a substantial part in bringing about the event, the district

---

[19] R.C. maintains that we should review the question of prejudice for plain error. We disagree. We concluded in Part I that Glay did not invite the district court's jury instruction error. In fact, he objected to the duplicate instructions. *See* Minn. R. Civ. P. 51.04(a) (stating that "[a] party may assign as error: . . . an error in an instruction actually given if that party made a proper objection under Rule 51.03"); 59.01(f) (stating that a new trial may be granted for "[e]rrors of law occurring at the trial, and objected to at the time").

31

court instructed the jury that "a cause is not a direct cause when there is a superseding cause." There is a tension between that jury instruction, which defined direct cause and superseding intervening cause relative to one another, and the special verdict form, which specifically instructed the jury to answer the superseding intervening cause question *only* if it answered "Yes" to whether R.C.'s negligence was a direct cause of McGill's death. In other words, reading the special verdict form in light of the causation jury instructions, the jury may have understood that it needed to assess whether the three assailants' conduct was a superseding intervening cause when determining whether R.C.'s negligence was a direct cause of McGill's death.[20] And once it made that determination, the jury—following the instructions on the special verdict form—did not answer the superseding intervening cause question directly. Consequently, the jury may have found that R.C.'s negligence did not directly cause McGill's death *because* it considered the three assailants' conduct to be a superseding intervening cause, and did not answer the superseding intervening cause question on the jury form because the form instructed it not to.

R.C. further argues that the jury may have found R.C.'s negligence was not a direct cause of McGill's death because R.C.'s actions did not have a substantial part in bringing about the death. For example, the jury could have found that R.C. breached its duty to protect McGill by failing to wand the three assailants, but also determined that the failure

---

[20] Had the special verdict form directly asked whether R.C.'s negligence had a substantial part in bringing about McGill's death rather than whether R.C.'s negligence was a direct cause of McGill's death, we may have more readily been able to determine whether any prejudice resulted from the confusion around the superseding cause instruction.

to wand the three assailants did not play a substantial part in bringing about McGill's death because the assailants may have obtained the weapon from a third party after reentering the Red Carpet. That is one possible explanation for the jury's verdict.[21] As Glay observes, however, his negligence claim did not rest solely on R.C.'s failure to wand the three assailants. He also asserted that it was negligent for R.C. to allow the three assailants to reenter the Red Carpet at all. The fact that the assailants may have obtained a weapon from a third party once they reentered does not compel the conclusion that the jury must have found that allowing the three assailants to reenter the Red Carpet was not a direct cause McGill's death.[22]

Based on our review of the record, we are uncertain about the reason the jury determined that R.C.'s negligence was not a substantial factor in McGill's death. We cannot determine the effect the district court's confusing jury instructions on an element of the claim had on the jury's verdict. We resolve that doubt in favor of Glay, the party asking for a new trial. *Rowe*, 702 N.W.2d at 743. *See also Crohn*, 190 N.W.2d at 680 (remanding the issue of liability to the district court when the jury found both that the defendant was

---

[21] R.C. urges us not to reach the substantive question of whether the jury instructions were confusing because, according to the narrative just described, there is sufficient evidence to support the jury's verdict. That is not the proper question here. The question is not simply whether a jury that was not confused may have reached the same verdict. We must also assess whether the empaneled jury may have reached its verdict *because* it was confused by the jury instructions and how they related to the special verdict form. As we discuss below, this is a possible explanation for the jury's verdict.

[22] Alternatively, the jury may have found that allowing the three assailants to reenter the Red Carpet was not negligent, but that the failure to wand them was. We have no way of discerning whether the jury made that distinction.

negligent in failing to protect against a foreseeable harm caused by a third party and that the third party's conduct was a superseding intervening cause).

## CONCLUSION

For the foregoing reasons, we affirm the court of appeals.

Affirmed.


HENNESY, J., took no part in the consideration or decision of this case.